**In re J.A.K., a minor.**

**Appeal of Commonwealth
of Pennsylvania.**

Superior Court of Pennsylvania.

Submitted March 16, 2006.

Filed Sept. 12, 2006.

Douglas J. Waltman, Asst. Dist. Atty., Reading, for Com., appellant.

David J. Long, Reading, for appellee.

BEFORE: STEVENS, McCAFFERY and PANELLA, JJ.

OPINION BY PANELLA, J.:

¶ 1 The Commonwealth appeals from the order entered on July 5, 2005, in the Court of Common Pleas of Berks County, which granted the motion to suppress evidence of Appellee, J.A.K., a minor. After careful review, we reverse.[1]

1. This appeal is permissible as the Commonwealth has certified in good faith that the order submitted for our review substantially handicaps the prosecution and the appeal is

¶ 2 The trial court summarized the pertinent facts and procedural history as follows:

The Reading Police Department ("Police Department") in Berks County, Pennsylvania, received a seat belt enforcement grant. On May 13, 2005, the Police Department conducted seat belt surveys to determine compliance with seat belt usage at the locations where the photographic safety checkpoints were to be held. These surveys were taken between 9:39 A.M. and 11:45 A.M. The Police Department employs written guidelines for the checkpoints that were developed in conjunction with the National Highway Safety Administration.

The Police Department issued a media release announcing that it would be conducting traffic safety checkpoints within the City of Reading to coincide with a national and state effort to encourage seat belt usage. The release further stated that the officers would conduct a systematic checkpoint with a sequence number to be determined. It closes with the following statements:

The common sense fact remains that utilization of all restraints provided in vehicles can help to prevent injury and/or death and in those extremely violent collisions can help to reduce the level of injury by preventing the driver or occupants from being thrown around inside the vehicle.

The City of Reading Police Department wishes that all the citizens of Reading and Berks County, and visitors, have a safe and happy holiday season and that we will be doing our part to encourage utilization of vehicle restraint systems and enforcing violations.

We are asking for the cooperation of all to achieve the desired result of increased restraint system usage and a lessening of the incidence of injury and death through this effort.

Commonwealth's Exhibit Number 12.

On May 25, 2005, the Police Department conducted a checkpoint in accordance with the provisions of the grant and in conjunction with the "Click it Or Ticket" state awareness program. According to the written guidelines every third car or those with obvious violations, such as invalid inspections, would be checked. The safety checkpoint began at 11:00 P.M.

Officer Jose Gonzalez was one of the officers who worked at the checkpoint on May 25, 2005. He was not the officer who directed vehicles. At 11:40 P.M. the juvenile was driving a vehicle that was diverted to the checkpoint stop. Since Officer Gonzalez did not direct the vehicles he is uncertain if the juvenile's vehicle was a third vehicle in the sequence to pass the checkpoint. Three passengers were also in the car. The owner of the vehicle was not present.

Officer Gonzalez does not remember if the juvenile used a seat belt. He did not cite the juvenile for not wearing a seat belt. He did not observe the juvenile make any moving violations.

Officer Gonzalez approached the rear passenger's side of the car with a flashlight. He looked inside the vehicle and observed a clear plastic bag of suspected marijuana on the floor of the vehicle on the right side of the rear passenger seat. He immediately removed the passengers and the juvenile. Officer Gonzalez then observed a clear bag of suspected marijuana between the juvenile's legs as he was exiting the vehicle. He arrested the

not intended for delay purposes. *See Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985); Pa.R.A.P. 311(d), 42 Pa. Cons. Stat.Ann.

juvenile and placed him in handcuffs. He subsequently found forty-six (46) bags of suspected crack and two (2) additional bags of suspected marijuana in the juvenile's right pocket. A preliminary Valtox Test showed positive reactions to the suspected illegal substances.

Sergeant Michael Kalin went to the checkpoint to assist the uniformed officers with the car. Prior to getting into the vehicle Sergeant Kalin looked under the front driver's seat to ensure his safety and found a Remington .32 caliber pistol loaded with the clip in and one (1) round in the chamber.

Criminal Investigator Joseph Walsh obtained a search warrant to search the vehicle. Nothing additional was found in the car.

The juvenile was charged with the acts of possession of a controlled substance [35 P.S. § 780–113(a)(16)], possession with the intent to deliver a controlled substance [35 P.S. § 780–113(a)(3)], firearms not to be carried without a license [18 Pa.C.S.A. § 6106(a)(1)], and possession of firearm by a minor [18 Pa.C.S.A. § 6110.1]. Neither he nor any of the passengers were charged with violating any of the provisions of the Motor Vehicle Code, including the provisions of the seat belt laws.

Based on the foregoing evidence, the [trial] court granted the juvenile's motion for the suppression of the physical evidence. The instant appeal followed.

Trial Court Opinion, 08/18/05, at 1–4.

¶ 3 On appeal, the Commonwealth raises the following issue for our review:

Whether the [trial] [c]ourt erred in granting the motion for suppression of physical evidence?

Appellant's Brief, at 4.

¶ 4 Initially, we set forth our standard of review.

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Keller,* 823 A.2d 1004, 1008 (Pa.Super.2003), *appeal denied,* 574 Pa. 765, 832 A.2d 435 (2003); *See also, Commonwealth v. Jones,* 845 A.2d 821, 824 (Pa.Super.2004).

¶ 5 In the instant case, the Commonwealth argues that the trial court erred when it determined that "failure to comply with the mandatory seat belt law, in and of itself, was never intended to be a violation of the Motor Vehicle Code for which a motor vehicle could be stopped by a police officer," and thus, "[t]he police lacked the authority to stop motor vehicles solely because their drivers and/or front-seat passengers over the age of four are not using seat belts." Trial Court Opinion, 08/19/05, at 5, *citing Commonwealth v. Henderson,* 444 Pa.Super. 170, 663 A.2d 728 (1995). We disagree.

¶ 6 The authority to conduct a traffic safety checkpoint arises from 75 Pa. Cons. Stat.Ann. § 6308(b), which states in pertinent part:

§ 6308.  **Investigation by police officers**

. . .

b) **Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles

or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to *be necessary to enforce the provisions of this title.*

75 PA. CONS.STAT.ANN. § 6308(b) (emphasis added).

¶ 7 The trial court's reliance upon *Henderson* for the proposition that police can never stop motor vehicles for seat belt violations is misplaced. In *Henderson,* this Court held that, "the fact that the occupants of a motor vehicle over the age of four are not using their seat belts, in and of itself, can never serve as articulable and reasonable grounds to stop a motor vehicle because the Motor Vehicle Code has not been violated under such circumstances." *Henderson,* 663 A.2d at 737–38. However, in so deciding, this Court was not confronted with a situation in which an investigative stop was conducted under established, systematic procedures, but rather, with a vehicular stop conducted by a sole police officer, independent of prior administrative oversight. Thus, *Henderson* was only concerned with vehicular stops for seat belt violations under 75 PA. CONS.STAT.ANN. § 4581(a)(2),[2] which are secondary violations, and not vehicular

stops for seatbelt violations pursuant to 75 PA. CONS.STAT.ANN. § 6308(b). In the instant case, there is no suggestion that police officers were stopping cars at the roadblock to cite them for seatbelt violations, but rather, the police officers were merely instructed to remind drivers that failure to wear a seatbelt is in violation of Pennsylvania law. As such, we find that this Court's decision in *Henderson* is distinguishable from the instant factual developments.

■ ¶ 8 Accordingly, we must next determine whether the legislature intended that the mandatory passenger restraint system under 75 PA. CONS.STAT.ANN. § 4581 is an appropriate justification for an investigative stop conducted pursuant to a vehicle checkpoint. In order to interpret the statute, we turn to the rules of statutory construction, which require a court to construe the words of the statute according to their plain meaning. *See* 1 PA. CONS.STAT. ANN. § 1903(a). After review, we are convinced, by the plain language of 75 PA. CONS.STAT.ANN. § 6308(b), that so long as a "systematic program of checking vehicles or drivers" is followed, then an investigative roadblock may be conducted to enforce any provisions of the Motor Vehicle Code. Indeed, the plain language of 75 PA. CONS.STAT.ANN. § 6308(b) clearly does not limit the situations under which such a roadblock may be conducted, other than to specify that such a stop must be "neces-

2. The statute provides, in pertinent part:
   § 4581. Restraint systems
   (a) Occupant protection.—
   . . .
   (2) Except for children under eight years of age and except as provided in paragraphs (1) and (1.1), each driver and front seat occupant of a passenger car, Class I truck, Class II truck or motor home operated in this Commonwealth shall wear a properly adjusted and fastened safety seat belt system. A conviction under this paragraph by State or local law enforcement agencies shall occur only as a secondary action when a driver of a motor vehicle has been convicted of any other provision of this title. The driver of a passenger automobile shall secure or cause to be secured in a properly adjusted and fastened safety seat belt system any occupant who is eight years of age or older and less than 18 years of age.
   * * *
   75 PA.CONS.STAT.ANN. § 4581(a)(2).

sary to enforce the provisions of [the Motor Vehicle Code]." *See* 75 PA. CONS.STAT. ANN. § 6308(b). Therefore, we find that while 75 PA. CONS.STAT.ANN. § 4581(a)(2) may prohibit a police officer from making routine traffic stops for a seatbelt violation, *nothing in that provision prohibits an investigative roadblock that checks for general motor vehicle safety compliance, provided that a proper systematic program is implemented.* Such roadblocks afford minimal personal interference, while furthering an important highway safety interest.

■ ¶ 9 Having thus far decided that a checkpoint for seatbelt usage is lawful in Pennsylvania, we must lastly address whether the checkpoint in the instant case complied with specified procedural requirements outlined by the Pennsylvania Supreme Court.[3]

In *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987), a plurality of the Supreme Court set forth guidelines to insure that an investigative roadblock is constitutionally acceptable:

The possibility of arbitrary roadblocks can be significantly curtailed by the institution of certain safeguards. First, the very decision to hold a drunk-driver roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of police officers in the field. In this connection it is essential that the route selected for the roadblock be one which, based on local experience, is likely to be travelled [sic] by intoxicated drivers. The time of the roadblock should be governed by the same consideration. Addition-

ally, the question of which vehicles to stop at the roadblock should not be left to the unfettered discretion of police officers at the scene, but instead should be in accordance with objective standards prefixed by administrative decision.

*Id.* at 293, 535 A.2d at 1043. The Court held that a drunk-driver roadblock must be conducted "substantially in compliance" with the above guidelines. *Id.* These guidelines were adopted by a majority of the Supreme Court in *Commonwealth v. Blouse,* [531 Pa.] at 173, 611 A.2d at 1180.

*Commonwealth v. Ziegelmeier,* 454 Pa.Super. 330, 685 A.2d 559, 561–562 (1996). *See also, Commonwealth v. Stewart,* 846 A.2d 738 (Pa.Super.2004), *appeal denied,* 584 Pa. 707, 885 A.2d 42 (2005).

¶ 10 In the instant case, J.A.K. conceded during the suppression hearing that the Commonwealth had complied with the appropriate prior administrative approval required for conducting investigative roadblocks. *See* N.T., 06/27/05, at 8–11. Moreover, J.A.K. also stipulated during the suppression hearing that the procedural guidelines for the roadblock as set forth in Commonwealth's Exhibit No. 2, were ostensibly followed by the Commonwealth. N.T., 06/27/05, at 9. The procedures that J.A.K. agreed were followed included, *inter alia:*

1) every 3rd car would be directed to stop;

2) restraint usage would be checked, as well as whether the operator of the vehicle possessed a valid operator's license, registration, and insurance;

3) other stations would be set up to follow-up with any discrepancies; and

---

**3.** Although our caselaw dealing with checkpoint procedures focuses on DUI checkpoints, we analyze the facts of this case utilizing the same guidelines, as there is no reasonable distinction between DUI checkpoints and vehicle safety checkpoints.

4) individuals who were not properly re-strained as required would be given a "click it or ticket" warning.

*See* Commonwealth's Exhibit No. 2.

¶ 11 Though these criteria, in fact, comport with the procedural guidelines for conducting a roadblock, the trial court nonetheless granted J.A.K.'s suppression motion, essentially on the grounds that "it is questionable that the real goal of the Police Department was to raise seat belt awareness since the checkpoint began at 11:00 P.M. ... By beginning the checkpoint only at 11:00 P.M., the police department was more likely to find criminal activity afoot and less need for vehicular safety." Trial Court Opinion, 08/18/05, at 4.

¶ 12 The record does not support this observation.[4] As noted in the Commonwealth's Exhibit No. 3, the Reading Police Department had previously conducted a safety checkpoint at the same location on three prior occasions. On one of these occasions, the police conducted the checkpoint at the same time as the checkpoint in question—from 11 p.m. to 3 a.m.—during which several non-driving violations of the motor vehicle code were discovered, including seatbelt/child seat violations. *See id.* Accordingly, the police clearly had a basis to conclude that the time and place selected for the checkpoint would target motor vehicle violations, including noncompliant restraint usage. Since the roadblock in the instant case was conducted substantially in compliance with the above-referenced guidelines, we find that it did not violate the Pennsylvania constitution. *Cf. Commonwealth v. Worthy,* 903 A.2d 576, ¶¶ 12–13 (Pa.Super.2006) (finding that sobriety checkpoint did not comport with established procedures governing operation of roadblock where the decision to suspend the checkpoint and resume the checkpoint was controlled by the arbitrary discretion of the police officers, rather than a prefixed, objective standard).

¶ 13 In conclusion, we find that a roadblock conducted, in part, to check restraint usage is permissible under the laws of this Commonwealth.[5] Moreover, we find that the roadblock at issue in the instant case substantially comported with the constitutional guidelines as set forth by our Supreme Court. Because the roadblock was constitutionally valid, the officer's plain view observation of the bag of marijuana in the back seat of J.A.K.'s vehicle constituted probable cause to initiate a search of the vehicle. We therefore reverse and vacate the Order of July 5, 2005, granting the Motion to Suppress.

¶ 14 Order reversed. Matter remanded for further proceedings consistent with

---

4. In so deciding, we find it instructive that the police officers in the case *sub judice* were instructed to not only check compliance with seatbelt usage, but also to check whether the drivers of the vehicles possessed a proper driver's license, registration, and proof of insurance. Commonwealth's Exhibit No. 2. Thus, we cannot agree with the trial court's classification of the roadblock as one purely conducted to enforce restraint usage. Though seatbelt safety may indeed have been the main purpose of holding the roadblock, we do not find the checkpoint was based solely thereon.

5. "[I]n *Blouse,* the Court relied heavily upon the lead opinion in *Tarbert* to conclude that systematic, nondiscriminatory, nonarbitrary roadblocks instituted to detect registration, licensing, and equipment violations are consistent with Article I, Section 8 of the Pennsylvania Constitution, so long as they are conducted in conformance with the guidelines announced in *Tarbert." Commonwealth v. Beaman,* 583 Pa. 636, 646–647, 880 A.2d 578, 585 (2005).

this opinion. Panel jurisdiction relinquished.