J-E02008-14

2014 PA Super 272

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CIPRIANO GARIBAY | |
| Appellant | No. 758 WDA 2012 |

Appeal from the Judgment of Sentence April 3, 2012
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0004217-2010

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, J., SHOGAN, J.,
ALLEN, J., OTT, J., WECHT, J., STABILE, J., and JENKINS, J.

OPINION BY JENKINS, J.:                          **FILED DECEMBER 9, 2014**

Cipriano Garibay ("Appellant") appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas following his conviction for Driving Under the Influence of a Controlled Substance (marijuana)[1] ("DUI"), and challenges the ruling denying his motion to suppress. After careful review, we reverse.

We first summarize the pertinent factual and procedural history. On November 19, 2009, police in the City of Pittsburgh set up a checkpoint in conjunction with the Pennsylvania Department of Transportation's Click It or

_____

[1] 75 Pa.C.S. § 3802(d)(1).

Ticket program designed to ensure compliance with seatbelt and motor vehicle equipment requirements. The police conducted the checkpoint on the inbound side of Banksville Road near the intersection with Crane Avenue, a location previously identified by police as a high traffic volume and high accident location appropriate for a safety checkpoint. In addition to prior advertising on billboards and in radio advertisements, signs erected approximately seventy-five yards before the safety checkpoint alerted motorists to the approaching checkpoint.

Appellant entered the checkpoint at approximately 9:05 p.m. Loud noises coming from the exhaust system of Appellant's white Dodge Caravan immediately drew police attention. The police directed Appellant to pull into a designated contact area to check the vehicle for violations. During their subsequent interaction with Appellant, police suspected he may have been under the influence of marijuana due to his failure to respond, his trance-like state, and a particularly pungent odor of marijuana emanating from Appellant's person and his vehicle. Based on these observations, the police asked Appellant to participate in field sobriety testing, which he failed.[2] Ultimately, the police determined Appellant was incapable of safely driving, and placed him under arrest for DUI. A search incident to the arrest yielded

_____

[2] Appellant participated in only one field sobriety test, during which he had trouble walking. Police concern for Appellant's personal safety prevented further field sobriety testing.

a white porcelain pipe in Appellant's right front jacket pocket, which police believed was used to smoke marijuana. Following his arrest, Appellant submitted to blood testing, which tested positive for marijuana.

Police charged Appellant with DUI, Possession of Drug Paraphernalia,[3] and two vehicle-related summary offenses.[4] On September 11, 2011, Appellant filed a motion to suppress alleging, *inter alia*, that the police did not comply with the ***Tarbert/Blouse***[5] guidelines for checkpoint stops. After conducting a hearing,[6] the trial court denied the motion to suppress by order dated December 23, 2011.

On January 6, 2012, Appellant proceeded to a non-jury trial during which counsel stipulated to the admission of Appellant's blood test results. The trial court found Appellant guilty of one count of DUI. On April 3, 2012,

_____

[3] 35 P.S. § 780-113(a)(32).

[4] Violation of Vehicle Equipment Standards, 75 Pa.C.S. § 4107, and Operating Vehicle Without Valid Inspection, 75 Pa.C.S. § 4103.

[5] ***Commonwealth v. Tarbert***, 535 A.2d 1035 (Pa.1987); ***Commonwealth v. Blouse***, 611 A.2d 1177 (Pa.1992).

[6] The trial court held two days of hearings with regard to Appellant's motion to suppress. The initial hearing, conducted on December 2, 2011, consisted of the testimony of Officers Donald I. Mitchell, Jr., and John Suzensky, both of whom testified regarding the circumstances surrounding the actual vehicle stop on the night in question. The trial court continued the matter until December 15, 2011, at which time Sergeant Richard Howe, who had ordered the time and location of the November 19, 2009 checkpoint, testified for the Commonwealth regarding the establishment and administration of the checkpoint.

the trial court sentenced Appellant to four days of intermediate punishment and six months of probation.  This appeal followed.

Appellant presents the following questions for our review:

I.  Can the Commonwealth sustain its burden of proof at a suppression hearing challenging the constitutionality of a checkpoint stop where the Commonwealth fails to produce documentary or testimonial evidence that specifies the reports, data, or statistics the police relied upon in selecting the location of the checkpoint?

II.  Can the Commonwealth sustain its burden of proof at a suppression hearing challenging the constitutionality of a checkpoint stop where the Commonwealth fails to produce documentary or testimonial evidence that specifies the reports, data, or statistics the police relied upon in selecting the time of the checkpoint?

Appellant's Brief, p. 3.

Our well-settled standard of review of the denial of a motion to suppress evidence is as follows:

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.  Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

Thus, the conclusions of law of the courts below are subject to [] plenary review.

***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa.2010) (internal citations and quotation marks omitted).

In examining Appellant's issues, we initially note that both the United States and Pennsylvania Constitutions prohibit "unreasonable searches and seizures." U.S. Const. Amendment IV; Pennsylvania Const. Art. 1, § 8. Further, our Supreme Court has explained that "[i]t is undisputed that the stopping of an automobile and the detention of its occupants is a seizure subject to constitutional restraints." ***Blouse***, 611 A.2d at 1178.

Pennsylvania's Vehicle Code provides police with authority to stop vehicles and conduct systematic DUI or traffic safety checkpoints, even though such stops are not based on reasonable suspicion or probable cause standards. Pertinently, the Vehicle Code provides:

> **§ 6308. Investigation by police officers**
>
> **\*\*\*\*\***
>
> **(b) Authority of police officer.--**Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).

Intrusions caused by checkpoint stops must be "balanced against the government's promotion of legitimate interests" in order to protect individuals "from arbitrary invasions at the unfettered discretion of the officers in the field." **Blouse**, 611 A.2d at 1178 (citing **Brown v. Texas**, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)). Accordingly, when conducting roadblock checkpoint stops, police in Pennsylvania must comply with the **Tarbert**/**Blouse** guidelines. Our Supreme Court has stated these guidelines as follows:

> [T]he conduct of the roadblock itself can be such that it requires only a momentary stop to allow the police to make a brief but trained observation of a vehicle's driver, without entailing any physical search of the vehicle or its occupants. To avoid unnecessary surprise to motorists, the existence of a roadblock can be so conducted as to be ascertainable from a reasonable distance or otherwise made knowable in advance. The possibility of arbitrary roadblocks can be significantly curtailed by the institution of certain safeguards. First the very decision to hold a drunk-driver roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of police officers in the field. In this connection it is essential that the route selected for the roadblock be one which, based on local experience, is likely to be travelled by intoxicated drivers. The time of the roadblock should be governed by the same consideration. Additionally, the question of which vehicles to stop at the roadblock should not be left to the unfettered discretion of police officers at the scene, but instead should be in accordance with objective standards prefixed by administrative decision.

**Blouse**, 611 A.2d at 1180 (quoting **Tarbert**, 535 A.2d at 1043). Otherwise stated:

> [T]o be constitutionally acceptable, a checkpoint must meet the following five criteria: (1) vehicle stops must be brief and must not entail a physical search; (2) there must be sufficient warning of the existence of the checkpoint; (3) the decision to conduct a checkpoint, as well as the decisions as to time and place for the checkpoint, must be subject to prior administrative approval; (4) the choice of time and place for the checkpoint must be based on local experience as to where and when intoxicated drivers are likely to be traveling; and (5) the decision as to which vehicles to stop at the checkpoint must be established by administratively pre-fixed, objective standards, and must not be left to the unfettered discretion of the officers at the scene.

*Commonwealth v. Worthy*, 957 A.2d 720, 725 (Pa.2008) (citing *Blouse*, *supra*, and *Tarbert*, *supra*). "Substantial compliance with the *Tarbert*/*Blouse* guidelines is all that is necessary to minimize the intrusiveness of a roadblock seizure to a constitutionally acceptable level." *Commonwealth v. Yastrop*, 768 A.2d 318, 323 (Pa.2001). However, where police do not comply with the guidelines in establishing a checkpoint, the trial court should suppress evidence derived from the stop, including the results of field sobriety and blood alcohol testing. *See Commonwealth v. Blee*, 695 A.2d 802, 806 (Pa.Super.1997).

Like DUI checkpoints, checkpoints established to inspect vehicle safety and seatbelt usage are lawful in Pennsylvania, provided that the checkpoint complies with the procedural requirements outlined by the *Tarbert*/*Blouse* guidelines. *In re J.A.K.*, 908 A.2d 322, 325-26 (Pa.Super.2006). In *In re J.A.K.*, a seatbelt safety checkpoint case, this Court specifically stated:

> [W]e are convinced, by the plain language of 75 Pa. Cons.Stat.Ann. § 6308(b), that so long as a "systematic program of checking vehicles or drivers" is followed, then ***an investigative roadblock may be conducted to enforce any***

***provisions of the Motor Vehicle Code***. Indeed, the plain language of 75 Pa. Cons.Stat.Ann. § 6308(b) clearly does not limit the situations under which such a roadblock may be conducted, other than to specify that such a stop must be "necessary to enforce the provisions of [the Motor Vehicle Code]." Therefore, we find that while 75 Pa. Cons.Stat.Ann. § 4581(a)(2) may prohibit a police officer from making routine traffic stops for a seatbelt violation, nothing in that provision prohibits an investigative roadblock that checks for general motor vehicle safety compliance, provided that a proper systematic program is implemented. Such roadblocks afford minimal personal interference, while furthering an important highway safety interest.

***In re J.A.K.***, 908 A.2d at 325-26 (internal citation omitted) (emphasis supplied).

Regarding the evidence the Commonwealth must put forth at a suppression hearing to justify the selection of a DUI checkpoint, this Court has explained that "[t]o ensure that the intrusion upon the travelling public remains minimal, we cannot accept [] general testimony elicited at [a suppression] hearing as proof of 'substantial compliance' with the [***Tarbert***/***Blouse*** guidelines]." ***Blee***, 695 A.2d at 806. Rather, "[a]t the very least, the Commonwealth [must] present information sufficient to specify the number of DUI-related arrests and/or accidents [at] . . . the specific location of the sobriety checkpoint." ***Id.*** If the Commonwealth fails to introduce evidence concerning the number of DUI-related arrests and/or accidents in explaining the choice of a checkpoint's location,[7] then the

_____

[7] We note that, in the past, we required the Commonwealth to put actual documentation explaining police determinations as to checkpoint details such
*(Footnote Continued Next Page)*

checkpoint will be deemed unconstitutional. ***Compare Blee***, ***supra*** (checkpoint unconstitutional where testimony at suppression hearing related to DUI arrests and DUI-related accidents county-wide and in certain municipalities rather than at the specific location of the sobriety checkpoint) and ***Commonwealth v. Trivitt***, 650 A.2d 104 (Pa.Super.1994) (same) with ***Commonwealth v. Ziegelmeier***, 685 A.2d 559 (Pa.Super.1996) (roadblock constitutional where testimony established the number of DUI-related accidents and arrests in the particular area of the checkpoint), ***Commonwealth v. Myrtetus***, 580 A.2d 42 (Pa.Super.1990) (same), and ***Yastrop***, ***supra*** (sobriety checkpoint constitutional where officer who set up checkpoint testified that he reviewed PennDOT records and information that led him to conclude the checkpoint location was a route likely to be travelled by intoxicated drivers). The Commonwealth must fulfill these same specified procedural requirements for both DUI and non-DUI checkpoints. ***See In re J.A.K.***, ***supra***.

---

*(Footnote Continued)* ————————————————

as location into evidence. ***See Commonwealth v. Trivitt***, 650 A.2d 104 (Pa.Super.1994) (holding the introduction of documentary evidence relied upon in determining location of checkpoint required to satisfy ***Tarbert***/***Blouse*** guidelines). We have since relaxed that requirement to allow the Commonwealth to introduce such evidence via testimony. ***See Commonwealth v. Ziegelmeier***, 685 A.2d 559 (Pa.Super.1996) (requiring same specific information as to location of specific checkpoints to satisfy ***Tarbert***/***Blouse*** guidelines, but repudiating the documentary evidence requirement of ***Trivitt***).

At the suppression hearing in the instant matter, as in all suppression matters, the Commonwealth had the burden of establishing that the challenged evidence was not obtained in violation of Appellant's rights by illustrating that the police complied with the requirements of the **Tarbert**/**Blouse** guidelines in conducting the Click It or Ticket seatbelt checkpoint. **See** Pa.R.Crim.P. 581(H); **see also In re J.A.K.**, **supra**. To satisfy the selection of the checkpoint time and location portion of this burden, the Commonwealth presented only the testimony of Sergeant Richard Howe of the Pittsburgh Police. Sergeant Howe testified that he ordered the November 19, 2009, Banksville Road seatbelt/safety equipment violation checkpoint as part of a "statewide public safety" campaign. N.T. 12/15/2011, pp. 4-5. However, Sergeant Howe provided none of the testimony contemplated in **Blee** regarding the number of prior safety violations and/or accidents at the specific checkpoint location in question. Instead, Sergeant Howe simply explained the selection of the Banksville Road location in general terms as follows:

> Q.    And, lastly, this location of Banksville Road where this was, where you specified this to have occurred, how did you come to specify Banksville Road?
>
> A.    The State likes us to do these safety check seatbelt checkpoints on busy roadways within the City of Pittsburgh. They pull that information from vehicle traffic, the volume of traffic and high accident locations.
>
> Q.    Okay. And what are some of the other examples of roads in the city that you have been told to use as locations[?]

A. We have done West Liberty Avenue. We have done Saw Mill Run Boulevard, which is Route 51. We have done in the past I believe on Bigelow Boulevard.

Q. And those locations, as well as Banksville Road, are all mentioned, I guess, to you by the statewide campaign?

A. Yes. They like to go where we do have high volume vehicle traffic. That way the message for the seatbelts can get out.

Q. The things you just described, high accident rate, high traffic, did those things that PennDOT apparently had, did that seem to comport with your own experience as an officer and being familiar with Banksville Road?

A. Within the City of Pittsburgh, yes.

N.T. 12/15/2011, pp. 6-7. Moreover, Sergeant Howe failed to offer any testimony regarding the selection of the checkpoint's time/duration. At the conclusion of this testimony, and without further questioning by Appellant, the Commonwealth rested with regard to the motion to suppress without offering additional testimony or documentary evidence pertaining to the determination of the checkpoint's location and time/duration.

Sergeant Howe's generalized testimony provided no specifics whatsoever regarding accidents, arrests, citations, violations, etc., regarding seatbelt usage or non-usage at the specific checkpoint location, nor did it present any insight into the selection of the checkpoint time and duration. Therefore, the testimony did not satisfy the requirements of the **Tarbert**/**Blouse** guidelines. Because the Commonwealth's only evidence as to the selection of the location of this checkpoint was Sergeant Howe's

general testimony, the trial court should have suppressed all evidence resulting from the stop at this seatbelt checkpoint.

Despite the deficiencies in Sergeant Howe's testimony, the Commonwealth argues "the 'Click It or Ticket It Buckle Up Campaign' checkpoint was established and conducted in a constitutionally acceptable manner." Commonwealth's Brief, p. 7. Specifically, the Commonwealth argues that "[b]eing that [the instant checkpoint] was not a DUI checkpoint, the testimony of Sergeant Howe about his experience with Banksville Road along with the Commonwealth's research on Banksville Road satisfied constitutional standards." *Id.* Essentially, the Commonwealth argues that, while police must comply with the *Tarbert*/*Blouse* guidelines in setting up DUI checkpoints, a lesser standard exists for establishing a non-DUI checkpoint. We do not agree.

*Blouse* itself involved a license, registration, and equipment checkpoint, and the Court applied the same guidelines as were appropriate for a DUI checkpoint. *See Blouse*, *supra*. There, our Supreme Court unambiguously stated:

> [t]he rationale behind upholding the constitutionality of drunk driving roadblocks applies equally to all systematic roadblocks, where the compelling interest of the statute in protecting its citizens from harm . . . outweighs the privacy interests of the individual.

*Blouse*, 611 A.2d at 1179. Further, exactly as in the instant matter, *In re J.A.K.* involved a "Click It Or Ticket" checkpoint. In that case, before

engaging in an analysis of whether the authorities complied with the specified procedural requirements outlined by the Pennsylvania Supreme Court in **Tarbert** and **Blouse**, this Court expressly noted:

> Although our caselaw dealing with checkpoint procedures focuses on DUI checkpoints, we analyze the facts of this case utilizing the same [**Tarbert**/**Blouse**] guidelines, as there is no reasonable distinction between DUI checkpoints and vehicle safety checkpoints.

***In re J.A.K.***, 908 A.2d at 326 n.3.

Based on this precedent, this Court is unwilling to conclude that there exist differing standards for setting up DUI and non-DUI checkpoints in this Commonwealth.

Judgment of sentence vacated. Remanded for further proceedings. Jurisdiction relinquished.

Ford Elliott, P.J.E., Bender, P.J.E., Bowes, Shogan and Wecht, JJ. join the opinion.

Judge Ott files a dissenting opinion in which Judges Allen and Stabile join.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/9/2014

- 13 -