J-S07024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JASON P. KEMFORT, | |
| Appellant | No. 975 MDA 2014 |

Appeal from the Judgment of Sentence of May 16, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0001442-2013

BEFORE: BENDER, P.J.E., OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.:                      **FILED APRIL 13, 2015**

Appellant, Jason P. Kemfort, appeals from the judgment of sentence entered on May 16, 2014, following his bench trial convictions of two counts of driving under the influence of alcohol and one count of obedience to traffic-control devices.[1] Upon review, we affirm.

The trial court set forth the facts of this case as follows:

> On January 19, 2013, at approximately 9:53 p.m., Officer Mark Oxenford was on duty in a marked patrol vehicle and observed a 2002 white Ford Taurus make a left turn on South 3rd Avenue by Penn Avenue. Officer Oxenford testified that a posted sign prohibits a left hand turn at that inter[sec]tion. Based on that observation, Officer Oxenford initiated a vehicle stop. [Appellant] pulled over and struck the curb during this traffic stop. The front passenger side tire went onto the curb.

---

[1] 75 Pa.C.S.A. §§ 3802(a)(1), 3802(b), and 3111(a), respectively.

Upon making contact with [Appellant], Officer Oxenford detected a slight odor of an alcoholic beverage coming from the vehicle. The [o]fficer also noticed that [Appellant's] eyes were blood shot. [Appellant] admitted that he was coming from a bar on 3rd and Spruce Streets and at the bar he consumed 4 to 5 Miller Light beers.

Officer Oxenford asked [Appellant] to step out of the vehicle to perform [standardized field sobriety tests ("SFST")]. [Appellant] had trouble getting out of the vehicle because his left arm was wrapped around his seatbelt. Officer Oxenford testified that he was certified to administer the SFST[] on the date in question. He further testified that [Appellant] failed all SFST[] given to him (Walk & Turn, The One Leg Stand, and the [Portable Breathalyzer Test] was positive for alcohol). At the conclusion of said SFST[], [Appellant] was placed under arrest for suspicion of Driving Under the Influence ("DUI"). [Appellant] was transported to the DUI Center for a sample of his blood to be withdrawn. The consented results indicated that [Appellant's] [blood alcohol content ("BAC")] was 0.103.

Trial Court Opinion, 8/26/20014, at 2.

The matter proceeded as follows:

On January 20, 2013, a criminal complaint was filed against [Appellant] charging him [with the aforementioned crimes]. On May 16, 2014, a bench trial was held on the matter. On the same date, the [trial] court found [Appellant] guilty on all three (3) counts and [Appellant] was sentenced. On June 6, 2014, [Appellant] filed a notice of appeal with [this Court]. On June 12, 2014, [the trial] court ordered [Appellant] to file a concise statement of [errors] complained of on appeal pursuant to Pa.R.A.P. 1925(b). [Appellant] filed a concise statement on June 27, 2014. [The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on August 26, 2014.]

*Id.* at 1 (superfluous capitalization omitted).

On appeal, Appellant presents the following issues[2] for our review:

A. Whether the Commonwealth failed to establish probable cause for [Appellant's] arrest for a violation of 75 Pa.C.S. § 3802(a)(2)?

B. Whether the evidence introduced at trial by the Commonwealth was insufficient to support a conviction for the following reasons:

1. The testimony of the arresting officer is so uncertain that it is unworthy of belief, and the trial court abused its discretion in accepting it as credible.

2. The *probata* at trial failed to conform to the *allegata* set forth in the criminal complaint, in that the complaint alleges a violation on January 20, 2013, where the evidence at trial establishes that the violation occurred on January 19, 2013, and further that the identity of the alleged violator was a person named "Morales."

3. The arresting officer testified that his recollection was "unclear" of the events of the arrest a year prior.

4. The Commonwealth failed to establish an unbroken chain of custody of [Appellant's] blood sample.

C. Whether the trial court erred in encouraging the Commonwealth to amend the criminal information to include a count for violation of § 3802(a)(2)?

Appellant's Brief at 2-3.

_____

[2] We have reordered Appellant's issues for ease of discussion.

In the first issue for our consideration, Appellant contends that police lacked probable cause to arrest Appellant. Appellant's Brief at 26-30. First, he asserts:

> Here, there was insufficient evidence to show that [Appellant] appeared impaired to the extent that he was incapable of driving. […H]e was stopped because he made a turn where turning that way was prohibited. This was a driving infraction and was not, in and of itself, evidence that his driving was impaired. The police officer pulled him over for this reason alone. There was no accident; he was not speeding or driving excessively slowly; his car was not drifting into the other l[a]ne, or weaving, or erratic.
>
> Therefore, at the time of the stop, there was no evidence o[r] suspicion of any possible further criminality. Any suspicion of DUI had to come from what happened after [the police officer] first approached the car.

*Id.* at 26. Appellant also maintains that the police officer lacked probable cause to arrest him after the motor vehicle stop because the officer only smelled a "slight" odor of alcohol and Appellant agreed to take SFSTs and his "failures" regarding those tests "were consistent with a sober person not understanding the officer's directions." *Id.* at 27-29.

Appellant presented these arguments in his pre-trial omnibus motion, seeking suppression. In reviewing the denial of a motion to suppress, "[o]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Garibay*, 106 A.3d 136, 143 (Pa. Super. 2014) (citation omitted). Further, "when reviewing the denial of a

- 4 -

motion to suppress, we look at all of the evidence in the light most favorable to the Commonwealth and determine whether the record supports the suppression court's findings of fact." *Id.*

"A police officer has the authority to stop a vehicle when he or she has reasonable suspicion that a violation of the vehicle code has taken place, for the purpose of obtaining necessary information to enforce the provisions of the code." 75 Pa.C.S. § 6308(b). "However, if the violation is such that it requires no additional investigation, the officer must have probable cause to initiate the stop." *Commonwealth v. Brown*, 64 A.3d 1101, 1105, (Pa. Super. 2013) (citation omitted). "Put another way, if the officer has a legitimate expectation of investigatory results, the existence of reasonable suspicion will allow the stop—if the officer has no such expectations of learning additional relevant information concerning the suspected criminal activity, the stop cannot be constitutionally permitted on the basis of mere suspicion." *Id.* (citation omitted). Here, Officer Mark Oxenford testified that he witnessed Appellant make a left hand turn at an intersection where two posted signs indicated that a left turn was prohibited. N.T., 6/28/2013, at 5-6. Because Officer Oxenford witnessed a motor vehicle code infraction, he had the requisite probable cause to initiate the traffic stop.

Moreover, this Court has previously determined:

> Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by

the person to be arrested. Probable cause justifying a warrantless arrest is determined by the totality of the circumstances.

Probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act. It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause. To this point on the *quanta* of evidence necessary to establish probable cause, the United States Supreme Court recently noted that finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable cause decision.

*Commonwealth v. Dommel*, 885 A.2d 998, 1002 (Pa. Super. 2005) (internal citations, quotations, and brackets omitted).

To initiate the traffic stop in this case, Officer Oxenford activated the siren and emergency lights of his marked police car. *Id.* at 6. "When [Appellant] pulled over, the passenger side front tire actually went up onto the curb and the vehicle came back down onto the roadway." *Id.* When Officer Oxenford approached the vehicle, Appellant was the only occupant. *Id.* at 7. Officer Oxenford detected the odor of alcohol on Appellant's breath and saw that Appellant's eyes were blood shot. *Id.* at 8. Appellant admitted that he was coming from a bar where he had consumed four to five beers. *Id.* When asked to exit the vehicle, Appellant got "wrapped up in the seat belt[.]" *Id.* at 11. Officer Oxenford testified that Appellant failed the SFST by staggering, swaying, and failing to follow directions. *Id.* at 10-14. Appellant acquiesced to a portable breath test that indicated the presence of alcohol in his bloodstream. *Id.* at 14. Accordingly, "[b]ased upon his

driving up on the curb, seeing him come out of the vehicle and detecting an odor of alcohol, the field tests, the combination of all that, [Officer Oxenford] felt [Appellant] was incapable of safely driving and placed him into custody for DUI." *Id.* at 16.

When the facts are viewed in totality, in the light most favorable to the Commonwealth as our standard requires, the trial court's factual findings are supported by the record and we discern no error of law in denying Appellant's request for suppression. Here, Officer Oxenford had probable cause to stop Appellant for a motor vehicle code violation. Thereafter, Officer Oxenford obtained reasonably trustworthy information, from firsthand observation, to warrant a belief that DUI had been committed and that probable cause supported Appellant's arrest. Accordingly, this issue fails.

In his second issue presented, Appellant contends that the Commonwealth failed to prove his conviction under 75 Pa.C.S.A. § 3802(a)(2) with sufficient evidence. *Id.* at 15-26. Appellant argues that the trial court should not have relied upon the testifying officer's recollection of events, specifically facts not contained in either the police incident report or the affidavit of probable cause, because that officer "repeatedly testified he had difficulty recalling the events of the arrest on January 19, 2013." *Id.* at 15. Appellant maintains that he produced evidence contradicting the officer's recollection of events. *Id.* at 18. Appellant also avers he "was prejudiced because the affidavit [of probable cause] not only contains the

wrong date of the crime, but contains allegations against another person [named] Morales." **Id.** at 17. Moreover, Appellant claims the Commonwealth failed to establish evidence of an unbroken chain of custody regarding Appellant's blood sample. **Id.** at 19. More specifically, he argues: "Inexplicably, the chain of custody card [] shows that the lock box [containing Appellant's blood sample] was received by St. Joseph[ Hospital's] employee Osiris Martinez Urquilla ("Urquilla"), the third shift technician at the hospital, at 4:50 AM, ten minutes prior to its delivery, according to Officer [Peter] Scornavacchi." **Id.** at 20. He suggests that "[w]ith no other evidence explaining the discrepancy other than to guess that it was 'highly unlikely' that blood samples were mixed up, and no explanation why the discrepancy occurred, the trial court clearly abused its discretion in allowing the defective chain of custody into evidence and relying on the [blood alcohol test] to find [Appellant] guilty of §3802(a)(2)." **Id.** at 24-25.

The standard we apply in reviewing the sufficiency of the evidence is

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may

- 8 -

sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-560 (Pa. Super. 2011) (citations omitted).

Appellant challenges his conviction under 75 Pa.C.S.A. § 3802(a)(2), which provides:

(2) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(2).

Here, there is no dispute that Appellant was driving and was the only occupant of the vehicle. Moreover, we will not disturb the trial court's credibility determinations or reweigh the evidence. Thus, the trial court did not err in crediting Officer Oxenford's version of events over Appellant's, as previously outlined above. Additionally, Officer Oxenford testified that the name Morales, that appeared on the affidavit of probable cause, "was probably for another defendant[, but] [s]hould have been for [Appellant]." N.T., 6/28/2013, at 24. Officer Oxenford attributed the discrepancy to a typographical error. *Id.* at 52. Officer Oxenford testified that the remaining

information in the affidavit was based solely upon his observations of Appellant. *Id.* at 24-26, 51-52. Regarding the chain of custody claim, laboratory technician, Michelle Reed testified that the chain of custody card indicated that Appellant's blood sample was delivered ten minutes after it was received. N.T., 2/26/2014, at 52-54. She testified that it was "highly unlikely" that the sample was someone else's blood and attributed the time discrepancy to "a difference in clocks from the DUI center to the hospital." *Id.* at 54. The trial court was permitted to accept this explanation and to conclude that the chain of custody had not been broken. *See Commonwealth v. Feliciano*, 67 A.3d 19, 29 (Pa. Super. 2013) (*en banc*) (Gaps in the chain of custody go to the weight of the evidence and not its admissibility). The blood test result showed Appellant's BAC was .103. *Id.* at 50. However, the trial court credited the defense expert's testimony that there is a 5-10% variance for the findings, which brought Appellant's BAC to below .10. N.T., 5/16/2014, at 60-61. Based upon all of the foregoing, there was sufficient evidence to support Appellant's conviction for DUI under 75 Pa.C.S.A. § 3802(a)(2). Appellant's second claim fails.

In his third issue presented, Appellant claims that he was prejudiced when the trial court suggested that the Commonwealth move to amend the bill of criminal information to include a count for DUI under 75 Pa.C.S.A. § 3802(a)(2). Appellant's Brief at 30. He argues "the Commonwealth did not of its own accord seek to amend the information to conform to the evidence introduced at trial until after closing argument, when the [c]ourt

was issuing its ruling, and after the [c]ourt suggested that it was not going to find [Appellant] guilty of a section 3802(b) violation." *Id.* at 34.

On this issue, this Court has declared:

According to Pa.R.Crim.P. 564, the court may permit amendment of an information when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Moreover, upon amendment, the court may grant such post-ponement of trial or other relief as is necessary in the interests of justice. The purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed. Our courts apply the rule with an eye toward its underlying purposes and with a commitment to do justice rather than be bound by a literal or narrow reading of the procedural rules.

[…W]hen presented with a question concerning the propriety of an amendment, we consider:

whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amended is not permitted.

Additionally,

in reviewing a grant to amend an information, th[is] Court will look to whether the appellant was fully

apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

Further, the factors which the trial court must consider in determining whether an amendment is prejudicial are:

(1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

Most importantly, we emphasize that the mere possibility amendment of information may result in a more severe penalty is not, of itself, prejudice. Moreover, this Court has reaffirmed this principle in the context of DUI offenses. *See Commonwealth v. Roser*, 914 A.2d 447, 454–455 (Pa. Super. 2006).

*Commonwealth v. Mentzer*, 18 A.3d 1200, 1202-1203 (Pa. Super. 2011) (quotations, original brackets, and most citations omitted). Finally, we note that, "if there is no showing of prejudice, amendment of an information to add an additional charge is proper even on the day of trial." *Commonwealth v. Picchianti*, 600 A.2d 597, 599 (Pa. Super. 1991).

- 12 -

Initially, we note that Appellant has waived this claim.[3] Regardless, this claim is without merit as there was no prejudice to Appellant in allowing the amendment. Appellant was fully apprised of the factual scenario supporting the charges against him. The crimes specified in the original bill of criminal information involved the same basic elements and evolved out of the same factual situation as the crime specified by the amendment. In fact, the charge that was amended was a lesser-included offense of the crime originally charged by information.[4] The amendment did not change the factual scenario supporting the charge or add new facts previously unknown to Appellant. The description of the charges did not change with the amendment. There was no necessity to change the defense strategy or reason for ample notice and additional preparation. Accordingly, we discern no prejudice to Appellant and, as such, the trial court did not err in permitting amendment.

_____

[3] Appellant did not object to the amendment at trial and, in fact, stipulated to amending the original bill of criminal information instead of requiring the Commonwealth to file a proposed order to amend. *See* N.T., 5/16/2014, at 58-60. Thus, Appellant waived this issue. *See **Commonwealth v. May***, 887 A.2d 750, 761 (Pa. 2005) ("The absence of [a] contemporaneous objection[] renders [a] claim[] waived."), *citing* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

[4] Appellant was originally charged with general impairment – high rate of alcohol under 75 Pa.C.S.A. § 3802(b) which requires a showing that the defendant's BAC was between 0.10% and 0.16%. However, the evidence at trial established that Appellant's BAC was below 0.10% which supports a conviction for general impairment under 75 Pa.C.S.A. § 3802(a)(2).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/13/2015