J.A21003/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MELISSA ARNDT, | : | |
| | : | |
| Appellant | : | No. 3571 EDA 2014 |

Appeal from the Judgment of Sentence October 20, 2014
In the Court of Common Pleas of Lehigh County
Criminal Division No(s).: CP-39-CR-0001277-2014

BEFORE: ALLEN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:　　　　　　　**FILED AUGUST 13, 2015**

Appellant, Melissa Arndt, appeals from the judgment of sentence entered in the Court of Common Pleas of Lehigh County, following her guilty plea to driving under the influence of alcohol.[1]　She argues the trial court erred in failing to suppress evidence seized during a DUI checkpoint, because the checkpoint was not performed in accordance with the appropriate guidelines.　We affirm.

We state the facts and procedural history as set forth by the trial court:

> On September 5, 2013, a [DUI Checkpoint] was established in the 140 block of West Main Street,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(b).

Macungie, Lehigh County, Pennsylvania, that ran from approximately 11:30 P.M. to 3:30 A.M. on September 6, 2013. Prior to the commencement of the DUI Checkpoint, the officers involved in this highway safety program attended a meeting where they were briefed as to the guidelines and expectations of the DUI Checkpoint, and the designated roles and duties were assigned. At this DUI Checkpoint, every vehicle was to be stopped for approximately 30 seconds.[4] There were written Sobriety Checkpoint Instructions that were reviewed at this meeting.

Sergeant Travis Kocher of the Macungie Police Department is the Coordinator of Events, Rovers and DUI Checkpoint. Sergeant Kocher participated in the planning of the DUI Checkpoint established on September 5, 2013 in the Borough of Macungie. Prior to the implementation of the DUI Checkpoint, Sergeant Kocher created a map that was submitted to the Coordinator of the Lehigh County DUI Task Force, Sergeant Jason Negrom, with whom he works closely.[5] The location of the DUI Checkpoint was determined by Sergeant Kocher and Sergeant Negrom, based on mobile awareness studies and statistical data including the number of DUI incidents in the Borough of Macungie and the number of accidents in the Borough of Macungie. Main Street is the main thoroughfare in the Borough of Macungie, and 60 of the 118 DUI incidents that occurred in the Borough of Macungie from approximately 2009 through 2014 happened on said street.

At approximately 12:30 A.M., [Appellant] traveled northbound through the DUI Checkpoint.[6] Officer Todd Bernhard of the Macungie Police Department, an assigned contact officer, stopped [Appellant] and briefly engaged her in conversation.[7] Officer Bernhard inquired if [Appellant] had anything to drink, and [she] stated that she had consumed alcohol earlier in the evening

During this brief stop, Officer Bernhard's cover officer pointed out to Officer Bernhard a red plastic cup located on the rear passenger side floor mat of the vehicle containing some kind of liquid. When Officer Bernhard inquired what was in the cup, [Appellant] denied even having a cup in

the vehicle. [Appellant] eventually relinquished the cup, which had an odor of alcoholic beverage. Consequently, [Appellant] was asked to step out of her vehicle and was escorted to the testing area, where she was administered a series of field sobriety tests. [She] failed these tests.

[Appellant] was transported to the Lehigh County Central Booking Center where her blood was drawn.[8] Analysis of her blood revealed a blood alcohol content of .14.

_____

[4] In the event that traffic would begin to back up, the Coordinator of the Lehigh County DUI Task Force would determine if fewer cars would be stopped, i.e., every other car. However, due to the fact that the Borough of Macungie is small, with only approximately 200 to 300 vehicles passing through the DUI Checkpoint, no changes needed to be made to this procedure on this date or in the past thirteen (13) years. The written procedure to be following if this traffic situation would ever arise is that there is a prior administrative decision as to what to do in the event that traffic backs up.

On this evening, 231 vehicles passed the DUI Checkpoint. There were 3 DUI alcohol arrests, 1 DUI drug arrest, 1 possession of marijuana arrest, 1 possession with intent to deliver marijuana arrest, 1 possession of marijuana and underage drinking arrest, and 6 traffic citations on this evening. These statistics were later submitted to PennDOT.

[5] The initial sign, "Sobriety Checkpoint Ahead" is placed 400 feet from the initial contact area. The "Be Prepared To Stop" sign is placed 200 feet from the initial sign. The next sign is "Slow Checkpoint Ahead Mini-Cade," which is placed 200 feet from the second sign. Each additional marker is then place 30 feet apart. The location of the contact officer and the cover officer are also delineated on the map.

[6] [Appellant] was the sole occupant in the vehicle and she was crying. [She] indicated that she had gotten into an

argument/altercation with someone prior to approaching the checkpoint.

[7] Upon initial contact, Officer Bernhard identified himself as working with the Lehigh County Task Force and stated that the purpose for the stop was to make contact with motorists as they passed through the Borough of Macungie to conduct a sobriety checkpoint.

[8] [The trial court] took judicial notice of the fact that Health Network Laboratories, located at 2024 Lehigh Street, is approved to test blood alcohol pursuant to July 6, 2013, 43 Pa. Bulletin 3786.

Trial Ct. Op., 8/20/14, 2-4 (record citations omitted).

On September 6, 2013, Appellant was arraigned on charges of driving under the influence of alcohol (generally),[2] driving under the influence of alcohol (highest tier, second offense),[3] and restrictions on alcoholic beverages.[4]  On June 9, 2014, Appellant filed an omnibus pretrial motion, and a suppression hearing was held on July 23, 2014.  The trial court issued an opinion denying the motion on August 20, 2014, and she pleaded guilty to driving under the influence of alcohol[5] on October 20, 2014.  That same day, Appellant was sentenced to "a term of imprisonment in the Lehigh County prison of not less than thirty (30) days nor more than six (6)

---

[2] 75 Pa.C.S. § 3802(a)(1).

[3] 75 Pa.C.S. § 3802(b).

[4] 75 Pa.C.S. § 3809(a).

[5] *See* note 1, *supra*.

months," which "was ordered to commence on November 20, 2014."[6] Trial Ct. Op., 12/16/14, at 1-2.

Appellant timely filed a post-sentence motion requesting a new trial on November 14, 2014, which was denied on November 19, 2014. She timely filed her notice of appeal to this Court on December 16, 2014. Appellant was not ordered to file a Pa.R.A.P. 1925(b) statement.

Appellant raises the following issue for review:

> Were Appellant's Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article One, Section Eight of the Pennsylvania Constitution violated when Appellant's Omnibus Pre-Trial Motion to Suppress Evidence was denied based on the suppression court's finding of substantial compliance with the *Tarbert*/*Blouse* guidelines?

Appellant's Brief at 1.

Appellant argues the DUI checkpoint was unconstitutional because it did not conform with one of the five guidelines set forth in ***Commonwealth v. Tarbert***, 535 A.2d 1035 (Pa. 1987), and ***Commonwealth v. Blouse***, 611 A.2d 1177 (Pa. 1992), which require a "decision as to which vehicles to stop at the checkpoint [be] established by administratively pre-fixed, objective standards, and [not] left to the unfettered discretion of the officers at the scene." Appellant's Brief at 4 (citation omitted). She argues there were "no . . . written procedure[s] to fall back upon" in the event traffic

---

[6] Appellant filed a petition to stay sentence pending appeal on November 19, 2014, which the trial court granted on November 24, 2014.

were to back up at the checkpoint, leaving the on-scene officer with too much discretion. **Id.** at 5. Thus, she contends the trial court erred in denying her motion to suppress. **Id.** at 8. We need not reach the merits of this issue.[7]

Our review is governed by the following standards:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

**Commonwealth v. Garibay**, 106 A.3d 136, 138-39 (Pa. Super. 2014) (alterations in original and citations omitted).

In **Commonwealth v. Faust**, 471 A.2d 1263 (Pa. Super. 1984), "[f]ollowing the entry of his guilty plea [to burglary], appellant did not file a petition to withdraw [his] plea." **Id.** at 1265. "Instead, he filed a petition

---

[7] We note at oral argument, Appellant seemingly conceded the instant issue had been waived by virtue of her guilty plea.

for reconsideration of sentence, which was denied." ***Id.*** On appeal to this Court, the appellant argued "[t]he lower court erred in failing to suppress" evidence. ***Id.*** In affirming his judgment of sentence, we opined:

> [The defendant] freely chose to plead guilty to burglary and criminal conspiracy. This plea, in turn, greatly restricted the number of appealable issues. Once a plea was entered, his petition to withdraw, and subsequent appeal from a denial thereof, were limited to allegations challenging the jurisdiction of the court, voluntariness of his plea and the propriety of the sentence imposed. Non-jurisdictional defects, such as those raised by [the defendant] here, are waived as a result of the plea of guilty, unless said defects are the primary motivation for the plea. [The defendant] neither alleges nor proves that the confession or physical evidence was the primary motivation for the plea.

***Id.*** 1266-67 (citations omitted).

Instantly, Appellant's guilty plea to driving under the influence of alcohol has "restricted the number of appealable issues" to those "challenging the jurisdiction of the court, voluntariness of [her] plea and the propriety of the sentence imposed." ***See id.*** Because Appellant's claim does not implicate any of these issues, but rather challenges the trial court's denial of her suppression motion, this Court discerns no basis for relief. ***See id.*** Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

J.A21003/15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/13/2015</u>