2017 PA Super 16

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| ANDREW C. MENICHINO | |
| Appellee | No. 1904 WDA 2015 |

Appeal from the Order entered November 10, 2015
In the Court of Common Pleas of Mercer County
Criminal Division at No: CP-43-CR-0000027-2015

BEFORE:  LAZARUS, STABILE, and STRASSBURGER,[*] JJ.

OPINION BY STABILE, J.:                          **FILED JANUARY 23, 2017**

The Commonwealth appeals from the order the Court of Common Pleas of Mercer County entered on November 10, 2015, granting Appellee Andrew C. Menichino's motion to suppress all the evidence derived from a vehicular stop at a DUI checkpoint.  Upon review, we reverse and remand.

Following a hearing, the suppression court found the following:

1.   Sergeant Brian Robinson has been employed with the Hermitage Police Department for 17 years, and is presently a patrol supervisor.

2.   Sergeant Robinson also serves as the coordinator for the Mercer County DUI Task Force.  As coordinator, he is responsible for analyzing data in order [to] locate problem areas for DUI offenses.  He has also served as coordinator

_____

[*] Retired Senior Judge assigned to the Superior Court.

for seven years and has conducted approximately five (5) checkpoints per year.

3. Prior to September 2[6], 2014, Sergeant Robinson utilized the Hermitage Police Department's Alert File System to identify two problem areas in the city of Hermitage through the use of statistics, State Route 18 [(]a/k/a Hermitage Road[)] and State Route 62 [(]a/k/a/ East State Street[)].

4. Sergeant Robinson testified that from September 2011 to September 2014 there were 94 DUI arrests on State Route 18.

5. Within the same period of time, there were a total 430 DUI arrests within the City of Hermitage. Consequently, 22% of the total number of DUI arrests in Hermitage during this time frame occurred on State Route 18.

6. Based on this statistic, Sergeant Robinson prepared and presented an Operation Plan for a sobriety checkpoint on State Route 18 to the Hermitage Chief of Police.

7. In determining the exact location of the checkpoint, Sergeant Robinson testified that factors such as safety for motorists, site distance, whether the site is geographically conducive, and whether the site is appropriate for license checks were considered.

8. Additionally, the standard methodology for operating the sobriety checkpoint required the posting of signage advising motorists of the checkpoint, the use of traffic cones to direct traffic, a minimum of two officers being present, and that every vehicle was stopped.

9. Sergeant Robinson was on the scene at the sobriety checkpoint when [Appellee] was stopped.

10. On cross-examination, Sergeant Robinson acknowledged that State Route 18, a/k/a/ Hermitage Road, is divided into North and South Hermitage Road at the intersection of State Route 62.

11. Further, he acknowledged the Alert File System did not break the 94 DUI arrests down between North and South

Hermitage Road, nor did it identify the block in which an arrest occurred. However, the system did identify landmarks for locations of some, but not all, DUI arrests.

12. The sobriety checkpoint was located in the 2700 block of North Hermitage Road, which has the Quaker Circle housing development as a landmark.

13. There had been two (2) DUI arrests at the Quaker Circle block of North Hermitage Road during that time frame.

14. Further, based on landmarks identified in the Alert File System, Sergeant Robinson testified there had been at least 44 DUI arrests on North Hermitage Road out of the total of 94 for all of State Route 18.

Suppression Court Opinion, 11/10/15, at 2-3.

After the hearing, the suppression court granted Appellee's motion to suppress to the extent he argued that the stop of Appellee was illegal because the DUI checkpoint was not constitutionally acceptable. This appeal followed.

As this Court recently recognized:

Our standard of review in addressing a challenge to the suppression court's granting of a suppression motion is well settled.

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

> *Commonwealth v. Miller*, 56 A.3d 1276, 1278–1279 (Pa. Super. 2012) (citations omitted).[1]  "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." *Commonwealth v. Brown*, 606 Pa. 198, 996 A.2d 473, 476 (2010) (citation omitted).

*Commonwealth v. Korn*, 139 A.3d 249, 252-53 (Pa. Super. 2016).

At issue here is the legality of the vehicular stop that took place at the DUI checkpoint set up by the Hermitage Police Department on September 26, 2014.[2]  In addressing the merits of this contention, we are guided by the following principles.

_____

[1] In *In re L.J.,* 79 A.3d 1073 (Pa. 2013), our Supreme Court applied prospectively a new rule regarding the scope of review in suppression matters.  Specifically, it clarified that an appellate court's scope of review in suppression matters includes the suppression hearing record, but not evidence elicited at trial.  The Commonwealth challenges the conclusions of the suppression court, not its findings.   As such, *L.J.* does not come into play.

[2] The Commonwealth raises the following issues:

> 1. Whether the Commonwealth failed to supply sufficient evidence regarding the likelihood of observing intoxicated drivers at the selected DUI checkpoint location[.]
>
> 2. Whether the law requires evidence of a high volume of accidents, arrests, and/or violations of the Vehicle Code on the specific block or intersection of a selected route rather than evidence that the selected route is likely to be traversed by intoxicated drivers[.]

Commonwealth's Brief at 4.

[W]hen conducting roadblock checkpoint stops, police in Pennsylvania must comply with the [***Commonwealth v. Tarbert***, 535 A.2d 1035 (Pa. 1987) and ***Commonwealth v. Blouse***, 611 A.2d 1177 (Pa. 1992)] guidelines. Our Supreme Court has stated these guidelines as follows:

> [T]he conduct of the roadblock itself can be such that it requires only a momentary stop to allow the police to make a brief but trained observation of a vehicle's driver, without entailing any physical search of the vehicle or its occupants. To avoid unnecessary surprise to motorists, the existence of a roadblock can be so conducted as to be ascertainable from a reasonable distance or otherwise made knowable in advance. The possibility of arbitrary roadblocks can be significantly curtailed by the institution of certain safeguards. First the very decision to hold a drunk-driver roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of police officers in the field. In this connection it is essential that the route selected for the roadblock be one which, based on local experience, is likely to be travelled by intoxicated drivers. The time of the roadblock should be governed by the same consideration. Additionally, the question of which vehicles to stop at the roadblock should not be left to the unfettered discretion of police officers at the scene, but instead should be in accordance with objective standards prefixed by administrative decision.

***Blouse***, 611 A.2d at 1180 (quoting ***Tarbert***, 535 A.2d at 1043). Otherwise stated:

> [T]o be constitutionally acceptable, a checkpoint must meet the following five criteria: (1) vehicle stops must be brief and must not entail a physical search; (2) there must be sufficient warning of the existence of the checkpoint; (3) the decision to conduct a checkpoint, as well as the decisions as to time and place for the checkpoint, must be subject to prior administrative approval; (4) the choice of

time and place for the checkpoint must be based on local experience as to where and when intoxicated drivers are likely to be traveling; and (5) the decision as to which vehicles to stop at the checkpoint must be established by administratively pre-fixed, objective standards, and must not be left to the unfettered discretion of the officers at the scene.

**Commonwealth v. Worthy**, [] 957 A.2d 720, 725 ([Pa.] 2008) (citing **Blouse**, **supra**, and **Tarbert**, **supra**). "Substantial compliance with the **Tarbert/Blouse** guidelines is all that is necessary to minimize the intrusiveness of a roadblock seizure to a constitutionally acceptable level." **Commonwealth v. Yastrop**, 564 Pa. 338, 768 A.2d 318, 323 (2001).[3] However, where police do not comply with the guidelines in establishing a checkpoint, the trial court should suppress evidence derived from the stop, including the results of field sobriety and blood alcohol testing. **See Commonwealth v. Blee**, 695 A.2d 802, 806 (Pa. Super. 1997).

**Commonwealth v. Garibay**, 106 A.3d 136, 139-40 (Pa. Super. 2014).

The issue raised here involves the fourth criteria, specifically, the location for the DUI checkpoint. **Worthy**, **supra**. To establish that the

_____

[3] In response to the guidelines set forth in **Tarbert**, the legislature amended Section 6308(b) of the Vehicle Code, which now reads as follows:

**Authority of police officer.--**Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).

roadblock is likely to be traveled by intoxicated drivers, the Commonwealth, at the very least, must adduce evidence "sufficient to specify the number of DUI-related arrests and/or accidents [at] . . . the specific location of the sobriety checkpoint." *Blee*, 695 A.2d at 806. If the Commonwealth fails to introduce evidence concerning the number of DUI-related arrests and/or accidents for a checkpoint's location, then the checkpoint will be deemed unconstitutional. *Id.*

Appellee argued, and the suppression court agreed, that *Garibay* requires the Commonwealth to specify the number of accidents, arrests, and violations at the "specific checkpoint location." Suppression Court Opinion, 11/10/15, at 4. Relying on *Garibay*, the suppression court and Appellee interpreted the "specific checkpoint location" phrase in *Garibay* to require evidence of arrests and/or accidents at the exact spot of the checkpoint (Block 2700 of North Hermitage Road). Because at the exact location of the checkpoint there were only two DUI arrests reported, the suppression court concluded that the Commonwealth failed to meet the criteria for a constitutionally acceptable DUI checkpoint. The suppression court also noted it could not take into account the other 44 arrests made on North Hermitage Road because those arrests did not occur at the specific location of the checkpoint. Accordingly, the suppression court concluded that the stop was illegal, and suppressed all evidence stemming from the illegal stop.

The suppression court and Appellee misconstrue the specificity required in choosing a checkpoint location. Our cases have held that the police, in setting up a DUI checkpoint, must articulate specifics such as the reason for the location and the number of prior DUIs **in the area of the checkpoint**. *See Commonwealth v. Stewart*, 846 A.2d 738, 741 (Pa. Super. 2004) (holding that the DUI roadblock set up "in the area of Bookspan on South Market Street in Upper Allen Township" was conducted substantially in compliance with the *Tarbert/Blouse* guidelines); *Commonwealth v. Ziegelmeier*, 685 A.2d 559, 562 (Pa. Super. 1996) (holding "there was testimony . . . that the determination was based on several factors, including volume traffic, number of DUI arrests in that area (as compared to the total number in Camp Hill) and the number of DUI related accidents. Therefore, the roadblock was constitutional under the requirements of *Tarbert* and *Blouse*."); *cf. Blee*, 695 A.2d at 806 (holding the officer "never testified as to the number of alcohol-related accidents and/or arrests on **Route 11 in Edwardsville**, the specific location of the sobriety checkpoint."). Thus, under current law, the specific location of the checkpoint is the area where the checkpoint is located, not the exact block/location of the checkpoint.

Here, there is no dispute that the area of the checkpoint is North Hermitage Road. For that specific location, the Commonwealth presented sufficient testimonial and documentary evidence showing that the location

selected was one likely to be traveled by intoxicated drivers (at least 44 DUI arrests out of the total of 94 for all of State Route 18 located within the City of Hermitage). Accordingly, the suppression court erred in not accounting for all DUI arrests made on North Hermitage Road for purposes of determining whether the checkpoint was constitutionally acceptable. Because the Commonwealth presented sufficient evidence to meet the location criterion under the ***Tarbert/Blouse*** guidelines, we conclude the checkpoint was conducted in a constitutional manner, and that the suppression court erred in concluding otherwise.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/23/2017</u>