J-S18013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MALIK MERCADO | |
| | No. 1444 EDA 2016 |

Appeal from the Order Entered April 18, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): MC-51-CR-0023918-2015

BEFORE:  PANELLA, J., SOLANO, J., and FITZGERALD, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED April 25, 2017**

On August 1, 2015, Appellee Malik Mercado was stopped at a sobriety checkpoint on East Allegheny Avenue in the 25th Police District in Philadelphia. The police officers operating the checkpoint arrested him and charged him with driving while under the influence of marijuana ("DUI"). The Philadelphia Court of Common Pleas affirmed the Philadelphia Municipal Court's conclusion that the DUI checkpoint was unconstitutional and suppressed the evidence gathered from the stop. The sole issue in this

_____

[*] Former Justice specially assigned to the Superior Court.

Commonwealth appeal[1] is whether the police chose the location of the DUI checkpoint in compliance with the ***Tarbert/Blouse***[2] guidelines and the body of law contained in this Court's application of those guidelines. After careful review, we affirm.

The Commonwealth contends that the Court of Common Pleas erred in its application of the ***Tarbert/Blouse*** guidelines.

> When the Commonwealth appeals from a suppression order, this Court may consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the record as a whole, remains uncontradicted. In our review, we are not bound by the suppression court's conclusions of law, and we must determine if the suppression court properly applied the law to the facts. We defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony.

***Commonwealth v. Myers***, 118 A.3d 1122, 1125 (Pa. Super. 2015) (citation omitted).

The ***Tarbert/Blouse*** guidelines were promulgated to allow the government to pursue its legitimate interest in preventing the "carnage" caused by DUI, ***Tarbert***, 535 A.2d at 304 (citation omitted), while protecting "the individual from arbitrary invasions at the unfettered

---

[1] The Commonwealth certified in its notice of appeal that the suppression order would terminate or substantially handicap the prosecution of Mercado, thereby perfecting our jurisdiction under Pa.R.A.P. 311(d).

[2] ***Commonwealth v. Tarbert***, 535 A.2d 1035 (Pa. 1987) and ***Commonwealth v. Blouse***, 611 A.2d 1177 (Pa. 1992).

discretion of the officers in the field," **Blouse**, 611 A.2d at 1178 (citation omitted). The guidelines set forth five general requirements that the Commonwealth must establish substantial compliance with in order to ensure the constitutionality of a DUI checkpoint. **See Commonwealth v. Garibray**, 106 A.3d 136, 140 (Pa. Super. 2014) (*en banc*). Here, only one part of the fourth requirement, that the choice of location for the checkpoint be based on experience as to where intoxicated drivers are likely to be driving, is at issue.

The essential facts of this case are undisputed and may be summarized as follows. The 25th Police District of Philadelphia suffered the highest number of DUI arrests in the city during the years 2013 and 2014. **See** N.T., Suppression hearing, 1/7/16, at 24, 29-32. The district covers approximately 2.3 square miles. **See id**., at 30. The data used by the police in this case was not broken down further to specific locations or streets within the district. **See id**.

Reacting reasonably to this data, the police sought to curb DUI in this district by establishing a DUI checkpoint. **See id**., at 29. Complicating matters was the fact that a checkpoint requires a large operation, involving "18 police officers, two police cruisers and one large processing center. It's about the size of a firetruck." **Id**., at 25. As a result, the police were also reasonably concerned with safety considerations, ruling out smaller, more residential side streets. **See id**.

The Court of Common Pleas concluded that under **Commonwealth v. Blee**, 695 A.2d 802 (Pa. Super. 1997), and **Garibray**, the police had not provided sufficient evidence to prove that "the DUI checkpoint in question substantially complied with the **Tarbert/Blouse** location requirement because" the evidence was not specific to the location of the DUI checkpoint. **See** Trial Court Opinion, 7/6/16, at 6. It therefore affirmed the Municipal Court's order that found the stop unconstitutional.

On appeal, the Commonwealth argues that the Court of Common Pleas misapplied **Blee** and **Garibray**.[3] The Commonwealth believes that **Commonwealth v. Fioretti**, 538 A.2d 570 (Pa. Super. 1988), is controlling. After reviewing these cases, we agree with the Court of Common Pleas that there is significant unresolved tension between the holdings of **Blee** and **Fioretti**.

In **Fioretti**, a panel of this Court was presented with circumstances similar to the present case. The appellant was one of several defendants who had been arrested at a DUI checkpoint in Williamsport. The location for the checkpoint had been chosen after determining that the thirteenth (of fifteen) police district in Williamsport had been the location of a high number

---

[3] The Commonwealth also argues that the stop was voluntary. While there was testimony to support this position, our review of the record reveals that the Commonwealth never presented this argument to the Court of Common Pleas or the Municipal Court. It is therefore waived for purposes of appeal. **See** Pa.R.A.P. 302(a).

of DUI arrests over a recent six-month period. *See Fioretti*, 538 A.2d at 576. However, the specific location within the thirteenth district had been chosen "for its safety features[.]" *Id*., at 576-577.

The suppression court held that the checkpoint did not comply with the *Tarbert* guidelines. The *Fioretti* panel disagreed, noting that "the location of the roadblock was chosen based on a statistical analysis of which district had the highest number of [DUI] arrests or accidents[.]" *Id*., at 549. It therefore reversed the suppression order and remanded for further proceedings.

Similarly, the *Blee* panel reviewed the placement of a DUI checkpoint in Luzerne County. It summarized the relevant evidence as follows:

> Deputy Chief William Barrett of the Wilkes-Barre Police Department testified that he was responsible for determining the site of the checkpoint. He decided to locate the checkpoint on Route 11 approximately one-quarter mile south of Main Street, near the shopping center in Edwardsville. In making this decision, Deputy Chief Barrett considered motorist safety, traffic volume, availability of lighting and whether motorists would have ample opportunity to avoid the checkpoint if they so desired. He also testified that he reviewed studies from the Pennsylvania Department of Transportation (PennDOT) regarding DUI arrests and DUI-related accidents in Luzerne County during the years 1989 through 1994. These studies were introduced into evidence and made a part of the record. On cross-examination, [he] admitted that the studies were not specific to DUI-related accidents and arrest at the particular location of the sobriety checkpoint, that is, Route 11 in Edwardsville. Rather, the studies provided general information indicating the number of DUI-related accidents and arrests in Luzerne County, the municipalities located in Luzerne County and the roads bordering Luzerne County. Specifically, the studies indicated that, among the roads in Luzerne County, Route 11 had the second highest incidence of alcohol-related accidents, and that, among the

municipalities in Luzerne County, Edwardsville had one of the highest incidence of alcohol-related accidents.[5]

> [5] Deputy Chief Barrett testified that from 1989 through 1994 there were 185 alcohol related accidents on Route 11 in Luzerne County, which is approximately thirty-eight miles in length. He also testified that there were forty-one alcohol related accidents in the Borough of Edwardsville, which contains numerous roads.

695 A.2d at 804 (citations omitted).

In contrast to *Fioretti*, the *Blee* panel concluded that the Commonwealth had failed to establish compliance with the *Tarbert/Blouse* guidelines.

> While Deputy Chief Barrett testified concerning the number of alcohol-related accidents on Route 11 in Luzerne County and the number of alcohol-related accidents in Edwardsville, Luzerne County, he never testified as to the number of alcohol-related accidents and/or arrests on Route 11 in Edwardsville, the specific location of the sobriety checkpoint. … At the very least, the Commonwealth was required to present information sufficient to specify the number of DUI-related arrests and/or accidents on Route 11 in Edwardsville, the specific location of the sobriety checkpoint.

*Id*., at 805-806.

We are thus left with one precedent, *Fioretti*, that held that the localization requirement was satisfied by data covering one of fifteen police districts in Williamsport, and another, *Blee*, that held that the localization requirement was not satisfied by data covering a small borough outside of Wilkes-Barre. The Commonwealth attempts to distinguish *Blee* from *Fioretti* by formulating a rule whereby police districts are sufficiently localized, while an entire municipality is not.

However, the Commonwealth's distinction does not hold up under review of the status or size of Edwardsville Borough when compared to the 25th police district in Philadelphia. First, it is clear from *Blee* that Edwardsville Borough was only a portion of a larger whole covered by the Wilkes-Barre Police Department. Thus, Edwardsville Borough is more like the police district at issue in *Fioretti* than the Commonwealth's argument admits.

This becomes even more obvious in light of the size of the administrative units at issue. Edwardsville Borough covers approximately 1.2 square miles. *See* About Edwardsville Borough, available at http://www.edwardsvilleborough.com/, retrieved 3/21/17. While there is no indication of the size of the 13th police district in *Fioretti*, the Williamsport Police Department covers approximately 9 square miles total. *See* Williamsport Bureau of Police, available at http://williamsportpd.org/Pages/Home.aspx, retrieved 3/22/17. It is therefore unlikely that the 13th district at issue in *Fioretti* was significantly larger than the 1.2 square miles contained in Edwardsville Borough. By way of comparison, the 25th police district at issue in the present case covers approximately 2.3 square miles. *See* N.T., Suppression Hearing, 1/7/16, at 30.

We therefore agree with the Court of Common Pleas that *Blee* is not easily distinguishable. We therefore turn to this Court's most recent

application of the **Tarbert/Blouse** guidelines. In a decision published after the parties submitted their principal briefs in this case, a panel of this Court reviewed a suppression order that required the Commonwealth to present evidence of arrests or accidents "at the exact spot of the checkpoint." **Commonwealth v. Menichino**, 2017 WL 281930, at *4, ___ A.3d ___ (Pa. Super. 2017).

The **Menichino** panel rejected this argument, holding that "under current law, the specific location of the checkpoint is the area where the checkpoint is located, not the exact block/location of the checkpoint." **Id**. Thus, in the case before it, evidence that 44 out of a total of 94 DUI arrests on State Route 18 occurred within the city of Hermitage was sufficient to satisfy the localization requirement of **Tarbert/Blouse**. **See id**.

Here, the Court of Common Pleas noted that the Commonwealth's evidence only addressed a 2.3 square mile area. It therefore reasoned that "it does not logically follow that any route selected within a police district with a relatively high number of DUI-related incidents will be a route that is likely to be travelled by intoxicated drivers[.]" Trial Court Opinion, 7/6/16, at 6 (quotation marks omitted). We agree that, under the specific circumstances of this case, the Commonwealth failed to establish that Allegheny Avenue in the 25th Police District was a route likely to be travelled by intoxicated drivers. 2.3 square miles within the City of Philadelphia is not sufficiently localized to constitute substantial compliance with the

***Tarbert/Blouse*** guidelines. While certainly not the only method to obtain compliance, evidence of DUI arrests on Allegheny Avenue within the 25th district would have been sufficient. But the Court of Common Pleas did not err in concluding that the evidence presented here was insufficient. Accordingly, we affirm the suppression order.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/25/2017</u>