J-S39010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RICHARD CHARLES STAIR, JR., | |
| Appellant | No. 1217 WDA 2016 |

Appeal from the Judgment of Sentence Entered July 22, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0014326-2015

BEFORE:  BENDER, P.J.E., BOWES, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED AUGUST 1, 2017**

Appellant, Richard Charles Stair, Jr., appeals from the judgment of sentence of, *inter alia*, a five-day term in a restrictive intermediate punishment program and six months' probation, imposed after he was convicted of driving under the influence of alcohol or controlled substance ("DUI")—general impairment, 75 Pa.C.S. § 3802(a)(1).  We affirm.

The suppression court summarized the procedural history and factual background of this case as follows:

> By way of Criminal Complaint, [Appellant] was charged with two (2) counts of driving under the influence of alcohol or a controlled substance … in violation of 75 Pa.C.S.[] § 3802(b)(2) (DUI—.10% to less than .16%); and 75 Pa.C.S.[] § 3802(a)(1)(DUI—general impairment) … for an incident that occurred on August 1, 2015.  In between [Appellant's] being

_____

[*] Retired Senior Judge assigned to the Superior Court.

charged and this matter proceeding to trial, the United States Supreme Court decided the matter of **Birchfield v. North Dakota**, 136 S.Ct. 2160 (2016) that held that the Fourth Amendment permits warrantless breath tests for driving under the influence, but warrantless blood tests are prohibited. As such, on the date of trial, the Commonwealth withdrew count one, DUI—.10% to less than .16%, and proceeded only on count two, DUI[—]general impairment.

[Appellant] filed a Motion to Suppress, and a hearing was held on July 22, 2016. At the conclusion of this hearing, the suppression [motion] was denied. The matter proceeded to a stipulated non-jury trial before the undersigned on July 22, 2016[,] after which [Appellant] was found guilty as to the sole count of DUI[—]general impairment. [Appellant] was sentenced on that same date to serve 5 days in restrictive intermediate punishment to be served in Renewal Therapeutic Housing Program.

On August 17, 2016, [Appellant] filed his Notice of Appeal. Via [o]rder of [c]ourt [d]ated August 22, 2016, Counsel for [Appellant] was directed to file a Concise Statement of Matters Complained of on Appeal. [Appellant] filed his Concise Statement on September 8, 2016….

\*\*\*

The following are the facts found to be credible by this [c]ourt during the suppression hearing and non-jury trial. Sergeant Douglas Ogden, a Moon Township Police Officer with twenty (20) years of experience, is the project coordinator and program director of the West Hills DUI Task Force. The West Hills DUI Task Force is a group of fifteen (15) communities in the West Hills that coordinates manpower and resources to operate DUI checkpoints in their member jurisdictions. The West Hills DUI Task Force conducted a DUI checkpoint on August 1, 2015[,] on Steubenville Pike in Robinson Township. Robinson Township is a member township of the West Hills DUI Task Force. Sergeant Ogden selected this date and time two to three weeks prior to the actual checkpoint. The portion of the Steubenville Pike that lies within Robinson Township is approximately one and a half miles long. Sergeant Ogden testified that the reasons this particular location, date, and time were selected are that Steubenville Pike in Robinson Township receives heavier than usual traffic following concerts or big events at First Niagara

Amphitheater; there is an increased likelihood of impaired drivers coming from [these events]; drivers tend to use this route to exit the highway and patronize a Sheetz that is located on this route; previous checkpoints at this same location yielded a high number of vehicles and impaired drivers coming through this location. Sergeant Ogden testified to DUI statistics for Robinson Township from 2008, 2009, 2010, 2011, 2012, 2013, and 2014. With regard to 2013, out of a total of 107 DUI arrests in Robinson Township, 60 occurred on Steubenville Pike. In 2014, there were a total of 131 DUI arrests in Robinson Township, and 70 occurred on Steubenville Pike.

Furthermore, the actual site selected is in a Kohl's parking lot, which was selected because it has a long sight distance that provides adequate vision; traffic approaching the DUI checkpoint can see it; it provides an easy avenue for officers to quickly leave the route if they encounter an erratic driver; and it is well lit. The West Hills DUI Task Force has an agreement with Kohl's such that the parking lot lights are left on to provide additional lighting.

Sergeant Ogden testified that prior to the August 1, 2015 checkpoint, he notified the local media outlets so that they could publish the DUI checkpoint. This notification is just a broad notification that provides a general deterrence factor. The actual notice of the specific checkpoint was the signage posted at exactly 500 feet prior to the checkpoint that read "Sobriety Checkpoint Ahead" and a second sign posted exactly at 300 feet prior to the checkpoint that read "Be Prepared to Stop." The lights of the checkpoint were able to be seen prior to the posted signage.

Officer Patrick Zilles, a police officer with Findlay Township for over twenty-three (23) years, was working at the August 1, 2015 DUI checkpoint. He has substantial training in detecting signs of impairment relating to alcohol consumption. On August 1, 2015, he was assigned to be a contact cover office[r], which is the first person who comes into contact with the drivers who are proceeding to the DUI checkpoint. When Officer Zilles came into contact with [Appellant], he noticed the following signs of impairment: bloodshot glassy eyes and mumbling speech. Further, upon questioning, [Appellant] admitted to consuming two beers. Based upon these signs, Officer Zilles had reasonable suspicion to believe [Appellant] was under the influence of alcohol and asked [Appellant] to exit his vehicle. Officer Zilles

then escorted [Appellant] to the Field Sobriety Testing area of the checkpoint and handed him off to Officer Brad Mermon.

Officer Mermon, a Robinson Township Police Officer for fifteen (15) years, was working at the August 1, 2015 DUI checkpoint. Officer Mermon also has extensive experience and training with identifying intoxicated individuals. He testified that he was assigned as a testing officer at this DUI checkpoint. A testing officer is assigned the task of explaining and administering the field sobriety tests to those individuals transferred to them by the contact officer. Officer Mermon testified that he encountered [Appellant] on that night, and administered the field sobriety tests. He further testified that the test occurred in the Kohl's parking lot, which was flat, dry, and contained straight painted lines. He observed [Appellant's] bloodshot and glassy eyes, and [that Appellant] had the odor of alcoholic beverage emanating from his breath and person. Officer Mermon administered two field sobriety tests: the walk and turn and the one[-]leg stand. During the walk and turn, [Appellant] exhibited five out of eight clues; during the one-leg stand, [Appellant] exhibited one out of four clues. Officer Mermon then concluded that [Appellant] was impaired to the extent that he was rendered incapable of safely operating a motor vehicle and placed [Appellant] under arrest.

Lastly, [Appellant] testified that he was at the Luke Bryan concert and consumed approximately four beers prior to the concert.

Suppression Court Opinion, dated 12/13/2016, at 1-5 (internal citations and footnote omitted).

As mentioned above, after a non-jury trial, Appellant was found guilty of DUI—general impairment. Appellant subsequently filed a timely notice of appeal and a concise statement of errors complained of on appeal. Herein, Appellant raises two issues for our review:

[1.] Did the [suppression] court err in denying Appellant's motion to suppress as the specific location chosen for the sobriety checkpoint was not one which, based on local experience, was likely to be traveled by intoxicated drivers?

[2.] Did the [suppression] court err in denying Appellant's motion to suppress as the West Hills DUI Task Force lacked jurisdictional authority to conduct the sobriety checkpoint at issue?

Appellant's Brief at 4 (unnecessary capitalization and emphasis omitted).

Initially, we set forth our standard of review:

When considering the denial of a suppression motion, this Court's review is limited to determining whether the court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed in the suppression court, we consider only the Commonwealth's evidence and so much of the appellant's evidence as is uncontradicted when read in the context of the record as a whole. Where the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the legal conclusions drawn from them are erroneous.

*Commonwealth v. West*, 937 A.2d 516, 527 (Pa. Super. 2007) (internal citations omitted).

First, relying on *Commonwealth v. Blouse*, 611 A.2d 1177 (Pa. 1992), Appellant argues that "[t]he specific location of the sobriety checkpoint conducted by the Task Force, on August 1, 2015, was not one which, based on local experience, was likely to be travelled by intoxicated drivers." Appellant's Brief at 12. By way of background, in *Blouse*, our Supreme Court adopted the following guidelines for conducting roadblocks and sobriety checkpoints, which include a requirement that the checkpoint is located on a route likely to be traveled by intoxicated drivers:

[T]he conduct of the roadblock itself can be such that it requires only a momentary stop to allow the police to make a brief but trained observation of a vehicle's driver, without entailing any physical search of the vehicle or its occupants. To avoid unnecessary surprise to motorists, the existence of a roadblock

can be so conducted as to be ascertainable from a reasonable distance or otherwise made knowable in advance. The possibility of arbitrary roadblocks can be significantly curtailed by the institution of certain safeguards. First the very decision to hold a drunk-driver roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of police officers in the field. ***In this connection it is essential that the route selected for the roadblock be one which, based on local experience, is likely to be travelled by intoxicated drivers.*** The time of the roadblock should be governed by the same consideration. Additionally, the question of which vehicles to stop at the roadblock should not be left to the unfettered discretion of police officers at the scene, but instead should be in accordance with objective standards prefixed by administrative decision.

**Blouse**, 611 A.2d at 1180 (quoting **Commonwealth v. Tarbert**, 535 A.2d 1035, 1043 (Pa. 1987) (plurality)) (emphasis added).

According to Appellant, although the Commonwealth "provided statistics which proposed that the majority of DUI arrests in Robinson Township occurred on Steubenville Pike[,]" these "statistics do not specify ***where*** on Steubenville Pike individuals were arrested." Appellant's Brief at 12 (emphasis in original; citation to record omitted). Appellant claims that "the length portion of Steubenville Pike in Robinson Township was never really clearly established by the Commonwealth[,]" and "[w]ithout more specific statistics about the location of the DUI arrests along Steubenville Pike, the location of the checkpoint in question was arbitrarily chosen at the discretion of the police officers involved, and was therefore in violation of the guidelines set forth by the Pennsylvania Supreme Court." **Id.** Put another way, "Appellant is suggesting that the Commonwealth has a burden to

establish why a specific location was chosen and such burden is not met by identifying one road as one traveled often by intoxicated drivers." *Id.* at 13. Appellant cautions that "[i]f the Commonwealth is not required to be more precise, then it can simply establish checkpoints on any road such as Interstate 79 by pointing to the number of DUI arrests on said road." *Id.* We disagree.

In *Commonwealth v. Menichino*, 154 A.3d 797 (Pa. Super. 2017), this Court recognized that "[t]o establish that the roadblock is likely to be traveled by intoxicated drivers, the Commonwealth, at the very least, must adduce evidence sufficient to specify the number of DUI–related arrests and/or accidents at ... the specific location of the sobriety checkpoint." *Id.* at 802 (citation, quotations, and original brackets omitted). At issue in *Menichino*, however, was the level of specificity required to meet that burden. The defendant convinced the suppression court that the Commonwealth was required "to specify the number of accidents, arrests, and violations at the '*specific checkpoint location*.'" *Id.* (emphasis added; citation omitted). In other words, "the suppression court and [the defendant] interpreted the 'specific checkpoint location' phrase … to require evidence of arrests and/or accidents *at the exact spot of the checkpoint*[,]" which in that case was Block 2700 of North Hermitage Road. *Id.* (emphasis added). In determining that the stop was illegal and all evidence stemming from it should be suppressed, the suppression court considered that "at the exact location of the checkpoint there were only two

- 7 -

DUI arrests reported," and "also noted it could not take into account the other 44 arrests made on North Hermitage Road because those arrests did not occur at the specific location of the checkpoint." *Id.*

On appeal, this Court reversed and remanded the case for further proceedings. We explained:

> The suppression court and [the defendant] misconstrue the specificity required in choosing a checkpoint location. Our cases have held that the police, in setting up a DUI checkpoint, must articulate specifics such as the reason for the location and the number of prior DUIs in the area of the checkpoint. *See Commonwealth v. Stewart*, 846 A.2d 738, 741 (Pa. Super. 2004) (holding that the DUI roadblock set up "in the area of Bookspan on South Market Street in Upper Allen Township" was conducted substantially in compliance with the *Tarbert/Blouse* guidelines); *Commonwealth v. Ziegelmeier*, … 685 A.2d 559, 562 (1996) (holding "there was testimony ... that the determination was based on several factors, including volume [of] traffic, number of DUI arrests in that area (as compared to the total number in Camp Hill) and the number of DUI related accidents. Therefore, the roadblock was constitutional under the requirements of *Tarbert and Blouse*."); *cf.* [*Commonwealth v.*] *Blee*, 695 A.2d [802,] 806 [Pa. Super. 1997] (holding the officer "never testified as to the number of alcohol-related accidents and/or arrests on Route 11 in Edwardsville, the specific location of the sobriety checkpoint."). *Thus, under current law, the specific location of the checkpoint is the area where the checkpoint is located, not the exact block/location of the checkpoint.*
>
> Here, there is no dispute that the area of the checkpoint is North Hermitage Road. For that specific location, the Commonwealth presented sufficient testimonial and documentary evidence showing that the location selected was one likely to be traveled by intoxicated drivers (at least 44 DUI arrests out of the total of 94 for all of State Route 18 located within the City of Hermitage). Accordingly, the suppression court erred in not accounting for all DUI arrests made on North Hermitage Road for purposes of determining whether the checkpoint was constitutionally acceptable. Because the Commonwealth

- 8 -

presented sufficient evidence to meet the location criterion under the ***Tarbert/Blouse*** guidelines, we conclude the checkpoint was conducted in a constitutional manner, and that the suppression court erred in concluding otherwise.

***Menichino***, 154 A.3d at 802-03 (emphasis added).

In the case *sub judice*, the Commonwealth adduced evidence sufficient to specify the number of DUI–related arrests and/or accidents in the area where the checkpoint was located, Steubenville Pike. Officer Ogden, who estimated that the portion of Steubenville Pike running through Robinson Township was only about a mile and a half long, testified to the following:

[Commonwealth's attorney:] Sergeant, I've handed you what I've marked as Commonwealth's Exhibit 1. Do you recognize what I've handed to you?

[Officer Ogden:] Yes. This is a letter that I forwarded in response to another case suppression issue, the same, exactly the same suppression issue toward a checkpoint in Robinson Township at that location. … So I forwarded this letter to the district attorney at the time to show the statistics that I had formed or recreated to justify the checkpoint that occurred in 2013 in that same location.

[Commonwealth's attorney:] And what does this data show?

[Officer Ogden:] Well, it reflects the data that I received. … It shows the number of DUI's in Robinson Township from 2008 up to 2012, just this form here that I received from Robinson Township. So 2008, 65 DUI arrests, 16 DUI crashes, one fatality, and the roadway where most of these incidents occurred was Steubenville Pike.

In 2009[,] they had 45 DUI arrests and throughout the entire township, 11 DUI crashes, no fatalities, and most of the incidents took place on Steubenville Pike.

In 2010[,] they had 131 DUI arrest, six DUI crashes, no fatalities, and the road where most of these incidents took place was Steubenville Pike, in which 63, 63 of the 131 DUI arrests took place on Steubenville Pike.

In 2011, 124 DUI arrests, two DUI crashes. 53 of the 124 DUI crashes took place on Steubenville Pike.

In 2012, 119 DUI arrests, 23 crashes, and most of where these incidents took place was on Steubenville Pike.

I then in this same letter provided the data … which talked about the number of arrests we had at checkpoints we set up on Steubenville Pike. Not all of these checkpoints were at the location that we used in this particular one, but Steubenville Pike is just not that long [of] a road. They're all checkpoints on Steubenville Pike. 2008, four DUI arrests at checkpoints. 2009, six DUI arrests at checkpoints on Steubenville Pike again. 2007 rather, seven DUI arrests on Steubenville Pike. 2011, six DUI arrests on Steubenville Pike, and 2012, the year that we were at that same location, 12 DUI arrests for traffic running through a checkpoint. I run a lot of checkpoints. 12 is a very high number of DUI arrests at a checkpoint.

[Commonwealth's attorney:] So all of this data is used to influence your selection of time, date and place for DUI checkpoints?

[Officer Ogden:] Yeah, in addition to the data which comes to the later pages because that's only to 2012. I have 2013 data as well we did have available to decide on this checkpoint and that would have been 107 DUI arrests in 2013, 11 crashes, no fatalities. 60 of 107 DUI's in Robinson Township had took place on Steubenville Pike. And in 2014[,] they had 131 DUI arrests in the township, 33 alcohol-related crashes, and 70, 70 of the 131 DUI arrests occurred on Steubenville Pike.

[Commonwealth's attorney:] So between the data you uncovered, input from local officers and your knowledge of the Luke Bryan concert that night, you decided to establish a checkpoint?

[Officer Ogden:] Correct.

**See** N.T. Suppression Hearing, 7/22/2016, at 13-16, 34.[1]

_____

[1] As mentioned *supra*, although Appellant contends that "the length portion of Steubenville Pike in Robinson Township was never really clearly established by the Commonwealth[,]" **see** Appellant's Brief at 12, he also
*(Footnote Continued Next Page)*

We deem this evidence sufficient to establish that the location selected was one likely to be traveled by intoxicated drivers. As explained in *Menichino*, "the specific location of the checkpoint is the area where the checkpoint is located, not the exact block/location of the checkpoint." *Menichino*, 154 A.3d at 803. Thus, the Commonwealth's data pertaining to the mile-and-a-half stretch of Steubenville Pike in Robinson Township satisfied this requirement, as it goes to the area where the checkpoint was positioned. The precision insisted on by Appellant is simply not required, and he proffers no authority to convince us otherwise. We therefore conclude that the suppression court did not err in denying his motion to suppress on this basis.

Second, Appellant argues that "[t]he [suppression] court erred in denying [his] motion to suppress as the West Hills DUI Task Force lacked jurisdictional authority to conduct the sobriety checkpoint pursuant to the Intergovernmental Cooperation Act [("ICA"), 53 Pa.C.S. § 2301, *et. seq.*,] and the Municipal Police Jurisdiction Act [("MPJA"), 42 Pa.C.S. §§ 8951-8954]." Appellant's Brief at 13 (unnecessary capitalization and emphasis omitted). Appellant asserts that "[t]he Commonwealth did not … admit any

_(Footnote Continued)_ ─────────

presented no evidence of its length at the suppression hearing. Further, we reiterate that, when reviewing the denial of a suppression motion, "we consider only the Commonwealth's evidence and so much of the appellant's evidence as is uncontradicted when read in the context of the record as a whole." *West*, 937 A.2d at 527.

- 11 -

testimony or exhibits which proved that the cooperating jurisdictions adopted an ordinance to participate in the Task Force, as is required by the ICA…." *Id.* at 15. Further, Appellant claims that "[w]hile the [MPJA] does grant jurisdictional authority to police officers from outside jurisdictions in limited circumstances, such a circumstance was not present here[,]" because this was not a "scenario[] where a criminal act has occurred or is ongoing *at the time … the assistance is requested*." *Id.* at 9, 16 (emphasis in original; citations omitted). He contends that "[w]hile the MPJA is to be construed liberally in order to effectuate its purpose, the subsection that was relied on to authorize the DUI checkpoint in question has to be stretched to its limit in order to allow for formal and continuous police cooperation across jurisdictions." *Id.* at 15-16 (citation to record omitted).

At the outset, we determine that Appellant has waived this issue. As the Commonwealth discerns, Appellant did not advance this argument at the suppression hearing, where he only raised issues with the notice provided and the location of the checkpoint. N.T. at 47-64. *See Commonwealth v. Freeman*, 128 A.3d 1231, 1242 (Pa. Super. 2015) (deeming issue waived, in part, because "when the trial court asked [the appellant] to state his basis for requesting suppression on the record at the commencement of the suppression hearing, [the appellant] did not raise such an argument") (citation omitted); *Commonwealth v. Bartee*, 868 A.2d 1218, 1221 n.6 (Pa. Super. 2005) (finding waiver, in part, where the appellant presented no

argument on the issue at the suppression hearing). Additionally, Appellant does not even aver that the issue was preserved at the suppression hearing. *See Commonwealth v. Williams*, 980 A.2d 667, 671 (Pa. Super. 2009) ("[T]he Commonwealth argues that this issue is waived because it was not raised at the suppression hearing. Pursuant to the Rules of Appellate Procedure, [the a]ppellant must specify where in the record this issue was preserved. In his brief, [the a]ppellant does not indicate where the issue was preserved in the trial court, nor does he even allege that he raised the issue at the suppression hearing. Consequently, we are constrained to deem this issue waived.") (citations omitted). Accordingly, we agree with the Commonwealth that this claim is waived.

Notwithstanding, even if this issue were not waived, we would still conclude that this argument is meritless. A nearly identical argument was rejected by an *en banc* panel of this Court in *Commonwealth v. Hlubin*, -- A.3d --, 2017 WL 2255549 (Pa. Super. filed May 23, 2017) (*en banc*). In that case — although this Court determined that the DUI checkpoint did not comply with the ICA because the municipalities constituting the Task Force did not "jointly cooperate" by individually adopting the ordinance required by law — we nevertheless reasoned that the checkpoint was valid under the relevant section of the MPJA, specifically section 8953(a)(3). *See id.* at *3,

*6.[2]  In response to the appellant's argument that "the MPJA relates only to situations where a request for assistance is **contemporaneous** with the commission of a crime and that probable cause to believe a crime is being or has been committed is the fundamental purpose of the MPJA," **id.** at *4 (emphasis in original),  this Court explained:

> [W]e affirm the trial court's conclusion that the instant checkpoint was valid under subsection 8953(a)(3) of the MPJA. There is no statutory language in the MPJA, specifically section 8953(a)(3), that would impose a "contemporaneous" requirement upon an officer's request for aid or assistance.  In fact, subsection 8953(a)(2), often termed the "hot pursuit" exception of the MPJA, specifically applies to those instances where an officer's chase into a neighboring jurisdiction is "immediate, continuous, and uninterrupted."  Moreover, "it is noteworthy that the predecessor of the MPJA made provision for police action outside an officer's primary jurisdiction in only one circumstance, *i.e.*, hot pursuit."  "The inclusion of additional instances of authorization indicates that the General Assembly

_____

[2] Section 8953(a) provides the following:

> **(a)  General rule.--**Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:
>
> ***
>
> (3) Where the officer has been requested to aid or assist any local, State or Federal law enforcement officer or park police officer or otherwise has probable cause to believe that the other officer is in need of aid or assistance.

42 Pa.C.S. § 8953(a)(3).

intended to expand the powers of local police to protect the public, where such expansion would not adversely affect the ultimate goal of maintaining police accountability to local authority."  Thus, in light of the purpose and spirit of the MPJA, in conjunction with its liberal construction, we decline to read such a "contemporaneous" element into subsection (a)(3).

*Hlubin*, 2017 WL 2255549, at *6 (original brackets and citations omitted).

Based on the foregoing, we would not find that the West Hills DUI Task Force lacked jurisdictional authority in this case.  Consequently, we conclude that the suppression court properly denied Appellant's motion to suppress, and, therefore, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judge Bowes joins this memorandum.

Judge Strassburger files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/1/2017

- 15 -