J-E04006-17

2019 PA Super 63

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MALIK MERCADO | : | No. 1444 EDA 2016 |

Appeal from the Order Entered April 18, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): MC-51-CR-0023918-2015

BEFORE: GANTMAN, P.J., BENDER, P.J.E., BOWES, J., PANELLA, J.,
SHOGAN, J., LAZARUS, J., OLSON, J., STABILE, J., and DUBOW, J.

OPINION BY PANELLA, J.                    **FILED FEBRUARY 27, 2019**

The Commonwealth appeals from the order of the Philadelphia Court of

Common Pleas, affirming the order of the Philadelphia Municipal Court, which

granted the motion to suppress evidence that Appellee, Malik Mercado was

found to be driving under the influence ("DUI") of a controlled substance,

marijuana, when stopped by Philadelphia police at a roadblock checkpoint.[1]

After careful review, we conclude that the police substantially complied with

the **Tarbert**/**Blouse**[2] guidelines adopted by our Supreme Court to establish

the constitutionality of a DUI roadblock. Specifically, the selection of a location

---

[1] The Commonwealth certified that the order would substantially handicap or
effectively terminate the prosecution, perfecting our jurisdiction under
Pa.R.A.P. 311(d).

[2] **See Commonwealth v. Tarbert**, 535 A.2d 1035 (Pa. 1987) (plurality), and
**Commonwealth v. Blouse**, 611 A.2d 1177 (Pa. 1992).

as well as the operation of the checkpoint met constitutional requirements.

Accordingly, we are constrained to reverse and remand.

The facts of the case are not in dispute. The Common Pleas Court

summarized them as follows:

> On July 31, 2015 at 10:45p.m., Philadelphia Police Officers [Eric] Kornberg and Soto[3] stopped Appellee at a DUI checkpoint located on the 300 block of East Allegheny Avenue, Philadelphia, Pennsylvania. Officer Kornberg noticed that Appellee had bloodshot, glassy eyes and detected the odor of burnt marijuana coming from both Appellee's vehicle and breath. Officer Kornberg stated that Appellee admitted to smoking marijuana [twenty] minutes prior to their interaction. Subsequently, Appellee submitted to a field sobriety test and was placed in custody for suspicion of DUI. Appellee was transported to the Police Detention Unit for a blood test.
>
> Lieutenant James McCarrick is responsible for selecting locations for DUI checkpoints throughout the City of Philadelphia. To determine the location of the DUI checkpoint in question, Lieutenant McCarrick tabulated all DUI-related incidents in Philadelphia over the previous two years and broke those figures down by DUI-related incidents per police district. He found that the 25th Police District, which is 2.3 square miles, was "the number one district in the city for DUIs," but confirmed that there was nothing in the statistics that indicated that the 300 block of East Allegheny Avenue had a higher frequency of DUI incidents than anywhere else in the 25th Police District because the figures are not location-specific.
>
> The Lieutenant explained that a DUI checkpoint operation "roughly consists of eighteen police officers, two police cruisers and one large processing center [that is] about the size of a fire truck." He testified that he would be unable to set up a DUI checkpoint in the "majority of locations" within the 25th Police District because it is a "highly congested residential area." Lieutenant McCarrick selects DUI-checkpoint locations that are "large enough and safe enough" to accommodate such an

---

[3] Officer Soto's first name is not readily apparent in the record before us.

operation.  He noted that the 300 block of East Allegheny Avenue is "a main vein of travel" within the district.

Common Pleas Court Opinion, 7/06/16, at 1-2 (record citations omitted).

Appellee Mercado filed a motion to suppress the DUI evidence, which the Municipal Court granted, after a hearing.  The Commonwealth appealed to the Court of Common Pleas.  On April 18, 2016, the Court of Common Pleas denied the Commonwealth's appeal, after a hearing, in effect affirming the grant of suppression.  The Commonwealth now appeals to this Court.

Our standard of review in addressing a challenge to the grant of a motion to suppress is well-settled.

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted.  The suppression court's findings of fact bind an appellate court if the record supports those findings.  The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; **however, we maintain *de novo* review over the suppression court's legal conclusions**.

***Commonwealth v. Menichino***, 154 A.3d 797, 800-801 (Pa. Super. 2017), *appeal denied*, 169 A.3d 1053 (Pa. 2017) (citations omitted) (emphasis added).

In its substituted brief, the Commonwealth presents one question for our review:

May a police official lawfully locate a sobriety checkpoint on a major road in a police district in which there is an anomalously high rate of DUIs?

Commonwealth's Brief, at 4.

The Commonwealth argues that suppression was improper because the roadblock and the checkpoint at issue were lawful under applicable precedent and met constitutional requirements. **See** Commonwealth's Brief, at 11-14. It maintains that under **Tarbert**/**Blouse**, "[s]ubstantial compliance with the guidelines is all that is required to reduce the intrusiveness of the search to a constitutionally acceptable level." **Id.** at 13 (citing **Tarbert, supra** at 1043) (quoting **Blouse**, at 1180).

In reviewing the merits of this contention, we are guided by the following legal principles.

> Initially, we note that the stopping of an automobile at a checkpoint constitutes a seizure for constitutional purposes, thus implicating the protections of both the Fourth Amendment to the United State Constitution**, see Michigan Dep't of State Police v. Sitz**, 496 U.S. 444, 450 [ ] (1990), and Article I, Section 8 of the Pennsylvania Constitution, **see Blouse**, [**supra** at] 1178. These provisions do not proscribe all searches and seizures, but only "unreasonable" ones. Thus, the central question in any litigation challenging a particular search or seizure is whether that search or seizure was constitutionally "reasonable."
>
> The reasonableness of a seizure that is less intrusive than a traditional arrest depends upon a three-pronged balancing test derived from **Brown v. Texas**, 443 U.S. 47 [ ] (1979), in which the reviewing Court weighs "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." **Id.** at 50 [ ].

\* \* \*

- 4 -

> **Because of the severe consequences of drunken driving in terms of roadway deaths, injuries, and property damage**, *see generally Sitz*, [*supra* at] 451 [ ] (summarizing national statistics); *Tarbert*, [*supra* at] 1042 (summarizing Pennsylvania statistics), both the United States Supreme Court and [the Pennsylvania Supreme] Court have recognized **that the government has a compelling interest in detecting intoxicated drivers and removing them from the roads before they cause injury**. . . . This has raised the question of whether the law permits police officers to effect suspicionless seizures in the form of brief vehicle stops at publicly announced sobriety checkpoints along roadways known to be frequented by intoxicated drivers. As noted, and as with all similar questions, this question has been answered with reference to the balancing test described above.

*Commonwealth v. Beaman*, 880 A.2d 578, 581–83 (Pa. 2005) (footnotes and some citations omitted) (emphases added).

When conducting roadblock checkpoint stops, the police must comply with the *Tarbert*/*Blouse* guidelines.[4] Our Supreme Court has explained these guidelines as follows:

> [T]he conduct of the roadblock itself can be such that it requires only a momentary stop to allow the police to make a brief but trained observation of a vehicle's driver,

---

[4] The *Tarbert* plurality suggested the guidelines to ensure constitutionality under Article I, section 8 of the Pennsylvania Constitution: "In our view, a drunk-driver roadblock conducted substantially in compliance with the above guidelines would reduce the intrusiveness to a degree which, when balanced against the compelling public interest in apprehending such drivers, would not violate Article I, section 8 of the Pennsylvania Constitution." *Tarbert*, 535 A.2d at 1043. The *Blouse* majority expressly adopted the *Tarbert* guidelines "because they achieve the goal of assuring that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Blouse*, 611 A.2d at 1180 (citation omitted).

without entailing any physical search of the vehicle or its occupants. To avoid unnecessary surprise to motorists, the existence of a roadblock can be so conducted as to be ascertainable from a reasonable distance or otherwise made knowable in advance. The possibility of arbitrary roadblocks can be significantly curtailed by the institution of certain safeguards. First the very decision to hold a drunk-driver roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of police officers in the field. **In this connection it is essential that the route selected for the roadblock be one which, based on local experience, is likely to be travelled by intoxicated drivers.** The time of the roadblock should be governed by the same consideration. Additionally, the question of which vehicles to stop at the roadblock should not be left to the unfettered discretion of police officers at the scene, but instead should be in accordance with objective standards prefixed by administrative decision.

**Blouse**, 611 A.2d at 1180 (quoting **Tarbert**, 535 A.2d at 1043) (emphasis added).

Similarly,

[T]o be constitutionally acceptable, a checkpoint must meet the following five criteria: (1) vehicle stops must be brief and must not entail a physical search; (2) there must be sufficient warning of the existence of the checkpoint; (3) the decision to conduct a checkpoint, as well as the decisions as to time and place for the checkpoint, must be subject to prior administrative approval; (4) **the choice of time and place for the checkpoint must be based on local experience as to where and when intoxicated drivers are likely to be traveling**; and (5) the decision as to which vehicles to stop at the checkpoint must be established by administratively pre-fixed, objective standards, and must not be left to the unfettered discretion of the officers at the scene.

**Commonwealth v. Worthy**, 957 A.2d 720, 725 (Pa. 2008) (citation omitted, emphasis added).

"Substantial compliance with the ***Tarbert/Blouse*** guidelines is all that is necessary to minimize the intrusiveness of a roadblock seizure to a constitutionally acceptable level." ***Menichino***, 154 A.3d at 802 (citation omitted).

Here, the Commonwealth argues that the grant of Appellee's motion to suppress is contrary to this Court's applicable precedent, in particular, ***Commonwealth v. Fioretti***, 538 A.2d 570 (Pa. Super. 1988). We agree.

In pertinent part, ***Fioretti*** reversed an order of suppression, affirming, as constitutional, the establishment of a roadblock by selecting a police district in Williamsport which had a disparately high number of drunk-driving arrests within a specified time frame (February 1, 1984 to August 8, 1985). ***See id.*** at 576. The ***Fioretti*** Court also noted that the actual location within the district was chosen for its safety features: a straight roadway, no cross streets, a wide berm, two lanes, good lighting, and a concrete barrier dividing the two flows of traffic travelling in opposite directions. ***See id.*** at 576–77.

Appellee counters that there was a failure of substantial compliance with the ***Tarbert***/***Blouse*** Guidelines by the Philadelphia police "because the specific location selected for the checkpoint was not supported by any data on DUI related arrests or accidents at that location, and it was not chosen because it was likely to be traveled by intoxicated drivers[.]" (Appellee's Brief,

at 1).[5] Similarly, he posits that *Fioretti* "did not fully address the fourth requirement of the *Tarbert*/*Blouse* guidelines with respect to whether the roadblock was one which, based on local experience, was likely to be traveled by intoxicated drivers." (*Id.* at 14).

In its opinion, the Common Pleas Court explained that it affirmed the Municipal Court's order granting suppression in favor of Appellee after deciding that this case was controlled by *Commonwealth v. Blee*, 695 A.2d 802 (Pa. Super. 1997) and *Commonwealth v. Garibay*, 106 A.3d 136 (Pa. Super. 2014), *appeal denied*, 123 A.3d 1060 (Pa. 2015). *See* Common Pleas Court Opinion, 7/6/16, at 6.

Notably, the Common Pleas Court concluded it was "[u]nable to reconcile the holdings" in *Blee* and *Garibay* with *Fioretti*, and based its ruling expressly on *Blee* and *Garibay*, disregarding *Fioretti*, "because they [*Blee* and *Garibay*] postdate *Fioretti*." *Id*. On careful review, we are constrained to conclude that the Common Pleas Court's reliance is misplaced.

This Court has recently distinguished *Blee* and *Garibay*, on facts similar to this case, in *Menichino*, *supra*. The *Menichino* Court explained:

> Appellee argued, and the suppression court agreed, that *Garibay* requires the Commonwealth to specify the number of accidents, arrests, and violations at the "specific checkpoint location." Suppression Court Opinion, 11/10/15, at 4. Relying on *Garibay*, the suppression court and Appellee interpreted the "specific checkpoint location" phrase in *Garibay* to require evidence of arrests and/or accidents at the exact spot of the

---

[5] *See also* N.T. Hearing, 4/18/16, at 3: "We conceded everything else."

checkpoint (Block 2700 of North Hermitage Road). Because at the exact location of the checkpoint there were only two DUI arrests reported, the suppression court concluded that the Commonwealth failed to meet the criteria for a constitutionally acceptable DUI checkpoint. The suppression court also noted it could not take into account the other [forty-four] arrests made on North Hermitage Road because those arrests did not occur at the specific location of the checkpoint. Accordingly, the suppression court concluded that the stop was illegal, and suppressed all evidence stemming from the illegal stop.

**The suppression court and Appellee misconstrue the specificity required in choosing a checkpoint location.** Our cases have held that the police, in setting up a DUI checkpoint, must articulate specifics such as the reason for the location and the number of prior DUIs **in the area of the checkpoint**. *See Commonwealth v. Stewart*, 846 A.2d 738, 741 (Pa. Super. 2004) (holding that the DUI roadblock set up "in the area of Bookspan on South Market Street in Upper Allen Township" was conducted substantially in compliance with the *Tarbert/Blouse* guidelines); *Commonwealth v. Ziegelmeier*, 454 Pa. Super. 330, 685 A.2d 559, 562 (1996) (holding "there was testimony ... that the determination was based on several factors, including volume traffic, number of DUI arrests in that area (as compared to the total number in Camp Hill) and the number of DUI related accidents. Therefore, the roadblock was constitutional under the requirements of *Tarbert* and *Blouse*."); *cf. Blee*, 695 A.2d at 806 (holding the officer "never testified as to the number of alcohol-related accidents and/or arrests on **Route 11 in Edwardsville**, the specific location of the sobriety checkpoint."). **Thus, under current law, the specific location of the checkpoint is the *area* where the checkpoint is located, not the exact block/location of the checkpoint.**

*Menichino*, 154 A.3d at 802-03 (first and second emphases in original; third emphasis added).

Here, we conclude after careful review that *Fioretti* and *Menichino* provide more persuasive authority for the resolution of this case than *Blee* and *Garibay*. The selection and operation of the roadblock checkpoint was in

substantial compliance with the **Tarbert**/**Blouse** guidelines. Lieutenant McCarrick testified, without contradiction, that he selected the route based on statistical data demonstrating that the 25th district accounted for the highest rate of DUI arrests in the city of Philadelphia, and that Allegheny Avenue was the main avenue of East-West travel in the district. **See** N.T., Suppression Hearing, 1/7/16, at 24-25, 29-32. Lieutenant McCarrick also considered traffic volume and safety factors in the selection of the checkpoint. **See id**., at 25.

Appellee argues that selection of a checkpoint location for reasons of safety and convenience "do not satisfy the constitutional requirements for a reasonable stop." (Appellee's Brief, at 17). We disagree.

To the contrary, our case law recognizes that safety is a proper consideration in the selection of a checkpoint. **See Fioretti, supra** at 576–77. Accordingly, we are constrained to reverse the grant of suppression and remand for a trial at which evidence of Appellee's intoxicated driving may be admitted.

Reversed and remanded to the trial court for proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/27/19