J-S36013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSHUA WELLING | : | |
| | : | |
| Appellant | : | No. 1031 WDA 2024 |

Appeal from the Judgment of Sentence Entered July 18, 2024
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0006200-2023

BEFORE: PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:        **FILED: JANUARY 8, 2026**

Joslynn Welling[1] appeals from the judgment of sentence entered in the Court of Common Pleas of Allegheny County for her convictions of Driving Under the Influence ("DUI"): Controlled Substance, 75 Pa.C.S.A. § 3802(d)(1), and DUI: Combination of Controlled Substances, 75 Pa.C.S.A. § 3802(d)(2). Welling challenges the denial of her suppression motion. She argues that the DUI checkpoint was illegal and the officer did not have cause to remove her from her vehicle. After careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] "Ms. Welling uses she/her/hers pronouns and the preferred first name 'Joslynn.'" Appellant's Brief, at 6 n.1. We have adopted Welling's preferred pronouns and name for our review.

On May 5, 2023, around 11:00 p.m., Welling was stopped at a DUI checkpoint on Perry Highway in McCandless Township. The officer detected an odor of burnt marijuana and observed that Welling was nervous and had bloodshot and glassy eyes. When asked whether she had consumed any alcohol or drugs, Welling initially denied that she had but then admitted that she had consumed edible marijuana that night. Welling was asked to leave her vehicle and perform a series of sobriety tests which Welling agreed to do. Based on her performance, the observing officer concluded that Welling was too impaired to operate a vehicle. Thereafter, Welling was read her *Miranda* rights and consented to additional drug influence evaluation. Additionally, Welling was read the DL-26B form and consented to a blood draw. Later, the lab report indicated that Welling tested positive for cannabinoids, specifically Delta-9 THC and Delta-9 Carboxy THC. On May 22, 2023, Welling was charged with one count each of DUI: Controlled Substance and DUI: Combination of Controlled Substances.

Welling filed a suppression motion, and a hearing was held on March 14, 2024. At the hearing, the officers testified as to the operation of the DUI checkpoint and their interaction with Welling. At the end of the hearing, the court denied Welling's suppression motion.

A stipulated non-jury trial was held on July 18, 2024. The trial court found Welling guilty of both counts and proceeded to sentencing. Welling was sentenced to a 4-day DUI alternative to jail program, six months' probation,

and highway safety school. Welling appealed and filed a court ordered concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). The trial court issued an opinion in support of its ruling.[2] *See* Pa.R.A.P. 1925(a).

On appeal, Welling raises the following issues.

1. Did the suppression court err in denying Ms. Welling's suppression motion as the DUI checkpoint that she was subjected to constituted an arbitrary and discriminatory roadblock, and, as a result, violated her rights under the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution?

2. Did the suppression court err in denying Ms. Welling's motion to suppress because Officer Dobransky did not possess the requisite quantum of cause necessary to remove Ms. Welling from her vehicle and subject her to standardized field sobriety tests?

Appellant's Brief, at 5 (unnecessary capitalization omitted).

Our standard and scope of review for the denial of a suppression motion is well established.

Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

---

[2] The Honorable Wrenna Watson ruled on the suppression motion. The Honorable Thomas Caulfield presided over the non-jury trial and sentencing. Presumably, because Welling's issues raised on appeal involve the denial of her suppression motion, Judge Watson authored the 1925(a) opinion.

*Commonwealth v. Galendez*, 27 A.3d 1042, 1045 (Pa. Super. 2011) (*en banc*) (citation omitted).

In her first issue, Welling challenges the constitutionality of the DUI checkpoint where she was stopped. "Although the stopping of a motor vehicle at a sobriety checkpoint constitutes a seizure for constitutional purposes, such checkpoint stops are not *per se* unreasonable, and hence are not *per se* unconstitutional under either the Fourth Amendment to the United States Constitution or Article I, Section 8 of the Pennsylvania Constitution." *Commonwealth v. Worthy*, 957 A.2d 720, 724 (Pa. 2008) (citation omitted).

When conducting a DUI checkpoint, the *Tarbert*/*Blouse*[3] guidelines provide the minimum constitutional requirements to which police must comply.

> To be constitutionally acceptable, a checkpoint must meet the following five criteria: (1) vehicle stops must be brief and must not entail a physical search; (2) there must be sufficient warning of the existence of the checkpoint; (3) the decision to conduct a checkpoint, as well as the decisions as to time and place for the checkpoint, must be subject to prior administrative approval; (4) the choice of time and place for the checkpoint must be based on local experience as to where and when intoxicated drivers are likely to be traveling; and (5) the decision as to which vehicles to stop at the checkpoint must be established by administratively pre-fixed, objective standards, and must not be left to the unfettered discretion of the officers at the scene.

_____

[3] *Commonwealth v. Tarbert*, 535 A.2d 1035 (Pa. 1987) (plurality); *Commonwealth v. Blouse*, 611 A.2d 1177 (Pa. 1992).

*Commonwealth v. Mercado*, 205 A.3d 368, 373 (Pa. Super. 2019) (*en banc*) (brackets, emphasis, and citation omitted). "Substantial compliance with the guidelines is all that is required to reduce the intrusiveness of the search to a constitutionally acceptable level." *Worthy*, 957 A.2d at 725 (brackets and citation omitted).

Welling asserts that the Commonwealth failed to satisfy the fifth prong. Welling argues that the Commonwealth failed to establish that the checkpoint was operated pursuant to pre-fixed, objective standards because it did not establish how the officer in charge ("OIC") of the checkpoint was determined and it failed to establish how many cars were waved through. *See* Appellant's Brief, at 20-23. Therefore, according to Welling, she was subjected to the unfettered discretion of the officers at the scene. *See id.* at 23. The Commonwealth argues that the instant case is consistent with our Supreme Court's decision in *Worthy*, and thus, the checkpoint was constitutional. *See* Appellee's Brief, at 23-27. We agree with the Commonwealth.

In *Worthy*, officers conducting a planned sobriety checkpoint suspended the checkpoint three times when the traffic was heavy to allow all traffic to pass through without stopping. *See Worthy*, 957 A.2d at 721-22. The appellee was one of the vehicles stopped and he was ultimately arrested and charged with two DUI offenses. *Id.* at 722. The appellee filed a suppression motion arguing that "because the administrative approval for the checkpoint failed to delineate any fixed criteria as to the circumstances under

which the checkpoint could be temporarily suspended and then restarted, it conferred upon the on-site officers unfettered discretion concerning which vehicles to stop[.]" *Id.* Agreeing with the appellee, the trial court granted the suppression motion and the Superior Court affirmed. *Id.* at 723. Our Supreme Court granted review and reversed.

The Supreme Court reasoned that the decision to stop vehicles was not subject to the arbitrary discretion of the officers because when the checkpoint was in operation every vehicle was briefly stopped and when the checkpoint was suspended every vehicle was allowed to pass through unimpeded. *See id.* at 726. Allowing officers to avoid unreasonable delay and ensure the safe operation of the checkpoint is consistent with the *Tarbert*/*Blouse* guidelines. *See id.* As the Supreme Court explained: "[d]iscretion so severely limited by the requirements of maximum safety and minimum delay is **not** unfettered." *Id.* (emphasis in original). Further, the Supreme Court rejected the notion that "the decision as to when to suspend a checkpoint can be reduced to a single, quantitative, pre-determined standard, *i.e.,* the specific number of vehicles backed up behind a checkpoint." *Id.* at 727 (citation omitted). Such a predetermined decision cannot "incorporate all of the complexities involved in assessing traffic conditions" and requiring officers to tally the vehicles passing through the checkpoint would distract the officers from their primary responsibility of "conducting a sobriety checkpoint safely, efficiently, and with only reasonable delay to the travelling public." *Id.*

Here, the trial court summarized the testimony and explained why the checkpoint complied with the fifth **Tarbert**/**Blouse** guideline.

> In this case, the government's factual presentation satisfied its burden of demonstrating compliance with the particular **Tarbert**-**Blouse** guideline at issue. The roadblock took place on May 5, 2023. The Operation Plan called for every vehicle to be stopped. It also recognized the possibility that a traffic back-up would take place. When that happens, Sgt. Petosky testified as to what the response would be. "If traffic or a backlog occurs at this checkpoint site to where there is a significant number of cars waiting to be checked, the checkpoint OIC will ensure that traffic is [waved] through without being stopped. After traffic has completely cleared, the next vehicle entering the checkpoint will be stopped and the checkpoint will resume normal operations." [N.T., 3/14/25, at] 13. From cross-examination of Sgt. Petosky, we learned a few things. The person making the decision to temporarily suspend the roadblock is the OIC. . . . The primary consideration which drives that decision is "just eyeballing" the situation.[FN6]

>> FN6: The court interpreted the phrase "just eyeballing it" as the officer's way of saying I considered all the circumstances that I was presented with and made a decision based upon the totality of those circumstances. Contributing to this conclusion was the manner in which the officer said it, the tone of his voice and his facial expressions as he said it.

> The government's second witness was Officer Connor Dobransky. He testified "that we let vehicles go on this checkpoint". [N.T., 3/14/25, at] 32. But, this evidence came with two caveats. First, "I don't know exactly when we let that influx of cars through." **Id.** The best he could offer was speculation.

>> Q: So, there could have been a backlog right prior to speaking [to Ms. Welling] —

>> A: Yeah. Absolutely. There could have been. Yes.

> [**Id.**] Second, the decision to suspend the roadblock is not his to make as that is "completely out of my control." [**Id.** at] 40. The totality of this evidence shows a written operational plan allowed

for a common eventuality — a traffic back-up. The plan provided a solution[: vehicles would be waved through until traffic abated.] That solution was implemented. Recognizing a certain latitude must be given [to] the commanding officer on the scene to extinguish the back-up, the court finds no deviation from the *Tarbert*-*Blouse* guidelines.

Trial Court Opinion, 1/2/25, at 10-11 (footnote and unnecessary capitalization omitted).

As explained by the trial court, and consistent with ***Worthy***, the process implemented by the officers on the scene, who exercised discretion to allow vehicles through due to traffic, as contemplated by the Operation Plan, did not run afoul of the ***Tarbert***/***Blouse*** guidelines. Such a decision cannot be adequately predetermined and allowing officers to make that determination on the scene is necessary for the safe, efficient, and effective operation of a sobriety checkpoint. ***See Worthy***, 957 A.2d at 727. Therefore, Welling's first issue does not merit relief.

In her second issue, Welling argues that the officer lacked probable cause to remove her from the vehicle. Welling argues that the officer's decision to remove her from the vehicle required probable cause that she was under the influence, which was lacking because it was based only on the "singular observation" of her bloodshot and glassy eyes. ***See*** Appellant's Brief, at 25. Welling's argument is wholly without merit.

First, Welling is incorrect that the officer needed probable cause to remove her from the vehicle. Only reasonable suspicion is required to support a lawful investigative detention. ***See Commonwealth v. Cauley***, 10 A.3d

321, 326 (Pa. Super. 2010). "To meet the standard of reasonable suspicion, the officer must point to specific and articulable facts which, together with the rational inferences therefrom, reasonably warrant the intrusion." *Id.* (citation omitted). In the context of DUIs, only reasonable suspicion is required to subject a driver to sobriety tests. *See id.* at 327.

Second, rather than a "singular observation" the officer testified that when he came into contact with Welling, he smelled the odor of burnt marijuana and Welling was nervous in addition to Welling having bloodshot and glassy eyes. *See* N.T., 3/14/25, at 28. Notably, Welling also admitted to having consumed edible marijuana that night. *Id.* At that point the officer asked Welling to exit the vehicle to perform sobriety tests. *Id.* at 29. The officer clearly had the requisite cause, reasonable suspicion, to do so. *See Cauley*, 10 A.3d at 327 (odor of alcohol and bloodshot eyes constituted reasonable suspicion of intoxication to justify investigative detention to allow officer to submit the defendant to sobriety tests). Based on Welling's performance of the sobriety tests, the officer's suspicions were confirmed and the investigation continued. Therefore, Welling's argument does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 01/08/2026